IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EVGIENI KOVALEV,                    :
    Petitioner                     :
                                   :
        v.                      :        CIVIL ACTION
                                   :
                                   :        NO. 02-4562
JOHN ASHCROFT, et al.              :
    Respondents                    :

## GOVERNMENT'S PRE-TRIAL MEMORANDUM

        The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant United States Attorney for the District, on behalf of defendants, the Attorney General of the United States and the Commissioner of the Immigration and Naturalization Service ("the Service"), submits this pretrial memorandum in connection with the hearing scheduled for Friday September 20, 2002 at 9:30 a.m. relating to Evgueni Kovalev's petition for writ of habeas corpus.

## I.    JURISDICTION

        This is a habeas petition brought under 28 U.S.C. § 2241 by Evgueni Kovalev, a native and citizen of the former Soviet Union.  Venue is proper in the Eastern District of Pennsylvania, as Mr. Kovalev is detained at Berks County Prison, within this judicial district.

## II.    STATEMENT OF FACTS

Petitioner Kovalev was born on January 26, 1954 in the province of Russia within the former Soviet Union.  (See Exhibit 1).  He entered the United States as a non-immigrant visitor for pleasure on April 30, 1989, with authorization to stay in the United States until October 12, 1989.  (See Exhibit 4).  Kovalev remained in the United States beyond October 12, 1989 without authorization from the Service.

On December 11, 1989, with the assistance of his attorney Robert Murtha, Jr. of New York, Kovalev filed an application for asylum.  (See Exhibits 1 and 2).  On March 29, 1991, the District Director of the Service in the District of New York denied Kovalev's asylum claim.  (See Exhibit 3).  On the same date, the Service issued an Order to Show Cause and Notice of Hearing, advising Kovalev that he was deportable from the United States pursuant to Section 241(a)(1)(C)(i) of the Immigration and Nationality Act ("the INA") for remaining in the United States without permission.  (See Exhibit 4). Kovalev appeared for a hearing before an Immigration Judge in New York City, and conceded the charges of deportability in the Order to Show Cause.  However, Kovalev sought relief from deportation by applying for asylum and withholding of removal (a form of relief similar to asylum).   On March 30, 1993, Immigration Judge John Speer denied Kovalev's application for asylum and withholding of removal.  (See Exhibit 5).[1]

---

[1]    The Immigration Judge's decision appears to focus primarily on the facts relating to the asylum claim of Kovalev's former wife, who claimed she was persecuted based on her partly

He granted Kovalev voluntary departure from the United States for a period of three months from the date of his order, with an alternative deportation order to the "U.S.S.R. (Russia)" if Kovalev failed to depart. He further explained that if Kovalev did not depart as required, "the privilege of voluntary departure will be withdrawn without further notice of proceedings" and the order of deportation would become "immediately effective." (See Exhibit 5, p.5).

Under the Immigration Judge's Order, Kovalev had until June 30, 1993 to depart. On June 29, 1993, Kovalev appeared at the INS office to sign a Voluntary Departure Notice, which extended his departure date to July 7, 1993. (See Exhibit 6). The Voluntary Departure Notice specifically informed him of the consequences of failing to depart, including the fact that he would be ineligible for certain forms of relief under the INA for five years after the scheduled date of departure. He was given oral notice of the contents of the form in English. Kovalev signed the form, and gave no indication that he did not understand what had been explained to him. (See Exhibit 6).

Kovalev did not leave the country by July 7, 1993. On September 14, 1993, the Service issued a Warrant of Deportation and sent Kovalev a notice that he had been ordered deported to the U.S.S.R. (See Exhibit 7). The notice was sent to the last address

---

Jewish background. Kovalev's claim was apparently based on his practice of the Russian Orthodox religion. In any event, the decision denies the asylum claim for both Kovalev and his then wife.

the Service had on record for Kovalev.  Although it appears that he was no longer living

at this address, a copy of the form was also sent to his attorney, Mr. Murtha.  On April 11,

1994, the Service sent Kovalev a "bag and baggage" letter to the last address it had on

record, advising him that the Service intended to enforce his departure from the United

States.  Again, a copy of the letter was sent to Kovalev's attorney, Mr. Murtha.  (See

Exhibit 8).  Kovalev did not report to the INS on the date scheduled in the letter.

      The Service did not hear anything from Kovalev for several years.

However, in 1997, Congress passed a law known as the Nicaraguan Adjustment and

Central American Relief Act of 1997 ("NACARA"), which provided a form of relief

known as "suspension of deportation" for aliens from certain Central American and

former Soviet bloc countries.  Kovalev, being from Russia, fell within the category of

aliens who were statutorily eligible for relief.[2]  On March 31, 1998, Kovalev, with the

assistance of his attorneys, Howard Rosengarten and Eric Horn from New York, filed a

motion to reopen his deportation proceedings with the Board of Immigration Appeals

("BIA"), seeking suspension of deportation pursuant to Section 203 of NACARA.  In his

motion, Kovalev represented to the Court that he was a Russian national.  (See Exhibit 9,

p.5).  Notably, the motion, which Kovalev signed, states: "Further, I understand the

---

[2]    It is unclear from the record how Kovalev learned of
NACARA and its potential application to him, but he
apparently understood enough of immigration law that he
found a lawyer to pursue this avenue.

consequences of failing to appear for a deportation hearing.  I knowingly and voluntarily

waive the oral notice required by the Immigration and Nationality Act, Section 242B.

Alternatively, I authorize this waiver by my attorney." (Exhibit 9, p.5).  Although he was

*prima facie* eligible for the relief, the Service opposed the granting of such relief as a

matter of discretion based on the fact that Kovalev had violated his voluntary departure

date.  (See Exhibits 10-12).  On August 31, 1998, Immigration Judge Speer denied the

relief as a matter of his discretion.  (See Exhibit 13).

Kovalev, represented by Messrs. Horn and Rosengarten, appealed the denial

of suspension of deportation.  (See Exhibit 14).  On September 23, 1999, the BIA

dismissed Kovalev's appeal, holding that the Immigration Judge did not err in exercising

his discretion to deny Kovalev's request for relief.  (See Exhibit 15).  On March 3, 2000,

the Service sent Kovalev a Warning to Alien Ordered Removed or Deported, again

advising him that he would be removed consistent with the Immigration Judge's order.

(See Exhibit 16).  Kovalev nonetheless remained in the country.

In the meantime, Kovalev's now 24 year old daughter, Elena Kovaleva,

became a naturalized citizen of the United States on March 27, 2001.  (See Exhibit 17,

p.1).  On or about April 20, 2002, Elana Kovaleva submitted a Form I-130 Petition for

Alien Relative as a prerequisite for Kovalev to adjust his status to a lawful permanent

resident.  At the same time, Kovalev submitted a Form I-485, application to adjust status

to a permanent resident.  (See Exhibit 17).  On June 12, 2002, at an interview relating to

Kovalev's application for adjustment of status, the Service learned of the outstanding

order of deportation, and took Kovalev into custody.

Kovalev is currently detained at the Berks County Prison. Kovalev filed

this habeas petition on or about July 8, 2002. He contends that the Service has abused its

discretion by detaining him during these removal proceedings. He also contends that this

Court should overturn the order of removal pending against him because of the alleged

failure of the Service to give him an oral warning in the Russian language of certain

consequences of ignoring his voluntary departure date.[3]

On August 20, 2002, the Service wrote to the Russian Consulate in New

York to obtain a travel document for Kovalev, in order to carry out his removal. (See

Letter and enclosures, attached at Exhibit 19). The Russian Vice Consul, Alexander

Demkin, responded on September 5, 2002. Mr. Demkin stated that the Russian

authorities had confirmed that Evgueni Kovalev was a Russian citizen and were prepared

to issue a travel document for his deportation to Russia. (See Exhibit 20). Kovalev has

filled out the required documentation for the Russian authorities, and the Service expects

---

[3]     Petitioner has also filed another motion to reopen his
proceedings with the BIA in July, 2002, based on the same
argument made in this habeas petition, i.e., that he did not
receive an oral warning consistent with Section 242B(e)(2) of
the INA back in 1993. It is unclear what the status is of this
motion to reopen. The BIA apparently rejected the motion on
July 31, 2002 for failure to pay a fee. (See Exhibit 18).
Counsel for petitioner is looking into this matter.

to receive a travel document for him shortly.  (See Exhibits 21 and 22).

The Service's performed a review of Kovalev's custody status on September 9, 2002.  Based on the ease with which they were able to obtain a travel document for Kovalev, the expectation that the Service will be carry out his removal, and concerns about whether he would appear again to be removed if released, the Service determined that Kovalev should remain in custody at this time.[4]

## III.  LEGAL ISSUES

This Court has jurisdiction under 28 U.S.C. § 2241(c) to review an alien's removal order, but only to the extent that it is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3) (2002). Following the 1996 amendments to the Immigration & Nationality Act, the habeas court has no jurisdiction to review the factual determinations or discretionary decisions of the Attorney General. Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001) ("Sol's claim that the IJ and the BIA abused their discretion by denying him a waiver of deportation does not raise a statutory or constitutional question, but instead challenges a discretionary determination by the IJ and the BIA.... We hold that federal courts do not have jurisdiction to review such claims when raised in a habeas petition...."); Gutierrez-Chavez v. INS, 298 F.3d 824, 829-30 (9th Cir. 2002)("We reiterate our holding to avoid any future confusion. Aliens may file

---

[4]    The Service has agreed that it will not carry out Kovalev's removal on or before September 20, 2002.

§ 2241 habeas petitions that allege constitutional or statutory error in the removal process.... Habeas petitions that, on the other hand, do not allege such error but simply seek to change the discretionary result reached by the INS are not within the scope of § 2241 and should be denied.")(internal citations omitted).[5]

    A.    <u>Kovalev's Detention is Lawful Under Both The Act and the Supreme Court's Decision in Zadvydas v. Davis.</u>

With regard to his detention, Kovalev cannot establish that his custody is illegal or violates the Constitution in any way.  Under the INA, the Service is given a 90 day "removal period" in order to carry out an order of removal.  8 U.S.C. §1231(a)(1)(A). Detention is mandatory during the removal period.  8 U.S.C. §1231(a)(2).  In <u>Zadvydas v. Davis</u>, 121 S.Ct. 2491 (2001), the Supreme Court held that the 90 day statutory removal period and detention for an alien in deportation proceedings may be extended by the Attorney General up to six months if necessary.  121 S.Ct. at 2505.  However, the Court did not limit the removal period to a maximum of six months.  Rather, as the Court stated: "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  <u>Id.</u>

---

[5]    The decisions of the IJ and BIA are those of the Attorney General.

In this case, the 90 day statutory removal period expired only yesterday, and under Zadvydas, the Service would have until December 12, 2002 as a presumptively reasonable period in which to remove Kovalev. Kovalev has not presented any evidence that the Service will be unable to remove him, and now that his Russian citizenship has been established, there does not appear to be any argument that he cannot be removed in the "reasonably foreseeable future." Kovalev cannot establish any constitutional claim with regard to his detention.

  B. <u>Kovalev Has No Claim For Habeas Relief Based On Section 242B(e)(2) of the INA.</u>

Prior to its repeal in 1996, Section 242B(e)(2) of the INA provided, in pertinent part, as follows:

> (A) IN GENERAL.  Subject to Subparagraph B, any alien allowed to depart voluntarily under section 1254(e)(1) of this title ... who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for the relief described in paragraph (5) for a period of 5 years after the scheduled date of departure or the date or unlawful reentry, respectively.

> (B)  WRITTEN AND ORAL NOTICE REQUIRED. Subparagraph (A) shall not apply to an alien allowed to depart voluntarily unless, before such departure, the Attorney General has provided written notice to the alien in English and Spanish and oral notice either in the alien's native language or in another language the alien understands of the consequences under subparagraph (A) of the alien's remaining in the United States after the scheduled date of departure. other than because of exceptional circumstances.

Section 242B(e)(2)(A) and (B) (repealed in 1996, but in effect at the time of petitioner's

immigration hearing in 1993).

Thus, Section 242B mandated a period of ineligibility for certain forms of relief for any alien allowed to voluntarily depart who remained in the United States after the scheduled date of departure, other than because of exceptional circumstances, after having been given proper notice of the consequences of failing to timely depart. The kinds of relief available under Section 242B(e)(5) of the INA included voluntary departure under Section 242(b)(1), suspension of deportation or voluntary departure under Section 244, and adjustment or change of status under Sections 245, 248, or 249. See Futeryan-Cohen v. INS, 140 F.Supp.2d 646, 653 (E.D.Va. 2001) (vacated on other grounds, 2002 WL 990342 (4th Cir. 2002).

The issue in this case is a narrow one. Kovalev concedes that he signed the Voluntary Departure Notice on June 29, 1993. He concedes that the Notice contains the proper written warnings required by Section 242B(e)(2). He also concedes that he was give oral notice in English of the warnings. He now contends, however, at this late stage in the game, that he did not understand the warnings in English at that time in 1993, and Service should have given him oral notice in the Russian language.

Kovalev's argument is flawed on two accounts. First, it is simply not credible that Kovalev did not understand the consequences of not leaving the country. He was represented by counsel at all times during the proceedings in 1993. He returned to the INS office on June 29, 1993, one day before the Immigration Judge's voluntary

departure date was to expire, in order to extend the time to leave until July 7, 1993. He did not leave, and then remained out of sight until 1997 when Congress passed a provision in NACARA that could offer him relief.[6] Kovalev then obtained counsel, and filed a motion for relief under NACARA. When that avenue failed, Kovalev then remained out of sight until his daughter became a citizen, at which point he sought to adjust his status on that basis. Given his sophistication about immigration law when it suits his needs, his claim that he did not understand the consequences of failing to depart in 1993 should be rejected.

Second, even accepting Kovalev's claim that he did not understand the oral warning in English, his argument fails because he overstates the effect of Section 242B(e)(2). Nothing in Section 242B(e)(2) states that if the warnings are not given orally in a language the alien understands, that his final order of deportation will be vacated.

---

[6]     This case presents a typical example of how delay favors the alien whom the Service is trying to remove. The goal of most aliens in the United States, especially those in removal proceedings, is to remain in the country. The Supreme Court has recognized that the way to remain is to prolong or delay the removal proceedings, by repetitive filings, multiple motions to reopen, or evading the process. Delay sufficiently and the alien will acquire "equities" such as petitioning relatives, or eligibility for a waiver after long-term illegal residence, or amnesty, or some other change in facts or law. See e.g. INS v. Doherty, 502 U.S. 314, 323 (1992) ("Every delay works to the advantage of the deportable alien who wishes to remain"); Shaar v. INS, 141 F.3d 953, 956-57 (9th Cir. 1998) (object of aliens and their lawyers is to "inject as much delay as possible into the proceedings").

The section only provides that if the proper warnings are not given, the alien will not be subjected to the consequences of Section 242B(e)(2)(A), and the alien will not be prevented from seeking certain kinds of relief for the five years during which he should have departed.  There is nothing in the language of the statute to support the claim that the failure to give the warnings undermines the validity of final order.

Indeed, in denying petitioner's motion to reopen, Judge Speer did not rely on the language of 8 U.S.C. § 1252B(e)(2).  (In fact, by the time Judge Speer issued his decision, the five year period referred to in Section 1252B(e)(2)(A) had just ended). Rather, Judge Speer relied on equitable principles, clearly believing that petitioner was not entitled to favorable discretion because he had flaunted the immigration laws of this country.  The cases Judge Speer cited reflect his belief that petitioner should not be able to benefit from new provisions in the law (NACARA) that were passed years after he ignored his voluntary departure date.  (See Exhibit 13).  In Matter of Onyedibia, 15 I&N Dec. 37 (BIA 1974), respondents, who failed to depart within the time initially granted to depart voluntarily, subsequently filed a motion to reopen seeking a new grant of voluntary departure. The Board of Immigration Appeals had jurisdiction to grant the form of relief sought; however, in the absence of respondents' demonstration of any compelling reason or circumstance for their failure to depart within the period of time initially granted, the Board denied their motion.  See also Bar-Levy v. INS, 990 F.2d 33 (2d Cir. 1993) (Court of Appeals held that the alien's failure to surrender for deportation made him a "fugitive

from justice" and he was barred by his fugitive status from pursuing his petition for review, in which he sought waiver of deportation).

Finally, petitioner never claimed in his 1998 motion to reopen that he did not understand the consequences of failing to depart. He made no such claim even after the Service opposed the motion specifically because of Kovalev's failure to depart.[7] (See Exhibits 9-11). To allow Kovalev to make such an argument at this late date is prejudicial to the Service, and violates the principle of finality.

---

[7] There is some suggestion in the habeas petition that the failure to raise the issue about notice in the previous motion to reopen was due to ineffective assistance of counsel. In order to pursue an ineffective assistance of counsel claim, however, the Board generally requires the petitioner to follow the requirements in Matter of Lozada, 19 I.& N. Dec. 637, 1988 WL 235454 (BIA 1988), aff'd, 857 F.2d 10 (1st Cir. 1988). Among other requirements, an alien must submit evidence that the allegedly ineffective counsel was informed of the allegations and allowed to respond, and an indicate that a complaint has been lodged with the bar, or reasons explaining why not. See Lata v. INS, 204 F.3d 1241, 1246 (9th Cir. 1999). There is no evidence that petitioner has met the Lozada requirements. In any event, the more logical conclusion is that if petitioner had not understood the warnings, he would have told his counsel at that time.

## IV.    <u>WITNESSES</u>

The Service does not anticipate calling any of its own witnesses, as it is not possible to obtain testimony from anyone who can confirm that Mr. Kovalev understood the oral warnings he received regarding voluntary departure in 1993. The documents in the record confirm that petitioner received both an oral and written warning in English, and that petitioner was represented by counsel at all times during his proceedings. The Service intends to cross-examine any witnesses called by petitioner.

Based on the confirmation by the Russian consulate that petitioner is a Russian citizen, the Service does not believe that there is any basis for petitioner to call Natalia Batkayeva, whom petitioner had listed as an expert regarding the issue of Russian citizenship. If the Court permits such testimony, the Service would be required to call witnesses from the Russian consulate, and cannot confirm the availability of such individuals to testify at this time. Moreover, it should be considered dispositive as to petitioner's citizenship that he represented to the Court that he was a Russian national when he sought to reopen his proceedings in 1998 in order to apply for suspension of deportation under NACARA. (See Exhibit 9, p.4 of motion packet). Petitioner should not be permitted to identify himself as a Russian citizen when it would advance his cause, but deny his citizenship in an attempt to thwart his removal.

VI.    **EXHIBITS**

1.    Request for Asylum, filed December 11, 1989

2.    Follow-up letter to INS from Robert Murtha, Esquire, attorney for petitioner, regarding asylum application, February 19, 1990

3.    Denial of asylum claim by INS, March 29, 1991

4.    Order to Show Cause and Notice of Hearing, March 29, 1991

5.    Decision of Immigration Judge John Speer denying asylum claim, March 30, 1993

6.    Voluntary Departure Notice, extending voluntary departure date to July 7, 1993, signed by Evgueni Kovalev on June 29, 1993

7.    Warrant of Deportation and warning letter, September 14, 1993

8.    "Bag and baggage" letter, notifying of arrangements made for departure to Russia, April 11, 1994

9.    Special NACARA Motion, filed on behalf of Evgueni Kovalev by attorney Howard Rosengarten, March 18, 1998

10.    Brief filed by INS opposing petitioner's Motion to Reopen proceedings to apply for suspension of deportation under NACARA, June 10, 1998

11.    Petitioner's reply brief regarding Motion to Reopen, June 19, 1998

12.    INS File memorandum regarding Motion to Reopen, August 12, 1998

13.    Immigration Judge John Speer's Order denying Motion to Reopen under NACARA, August 31, 1998, and BIA Notice regarding schedule for appeal

14.    Petitioner's appeal of Immigration Judge's March 31, 1998 Order

15.    BIA decision dismissing petitioner's appeal, September 23, 1999

16. Warrant of Removal/Deportation and Warning to Alien Ordered Removed or Deported, March 3, 2000

17. Form I-130, Petition for Alien Relative; Form I-485, Application to Adjust Status, both signed April 20, 2002; related documentation from INS regarding petitioner's application to adjust status

18. BIA's Rejection of Motion to Reopen, July 31, 2002

19. Letter from INS to Consulate of Russia with enclosed documents seeking travel document for Evgueni Kovalev, August 20, 2002

20. Letter from Alexander Demkin, Vice Consul of the Russian Federation, confirming Evgueni Kovalev's Russian citizenship, September 5, 2002

21. Post Order Custody Review Worksheet, September 9, 2002

22. Travel papers filled out by Evgueni Kovalev in connection with obtaining travel document from Russian consulate, September 9, 2002

## VII.   <u>TIME REQUIRED FOR HEARING</u>

The Service believes that the hearing will take approximately 3-4 hours.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

Dated: September 13, 2002

_____
SUSAN R. BECKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia PA 19106-4476
(215) 861-8310 Telephone
(215) 861-8349 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of September, 2002, I caused a true and

correct copy of the foregoing Government's Response to Petition for Writ of Habeas

Corpus to be served by email and hand delivery upon the following:

Tatiana Aristova, Esquire
Law Offices of John J. Gallagher, PC
1760 Market Suite, Suite 1100
Philadelphia, PA 19103

_____

Susan R. Becker