IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVGIENI KOVALEV, | : | |
|     Petitioner | : | |
| | : | |
|     v. | : | CIVIL ACTION |
| | : | |
| | : | NO. 02-4562 |
| JOHN ASHCROFT, et al. | : | |
|     Respondents | : | |

## GOVERNMENT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Susan Becker, Assistant United States Attorney for the District, on behalf of defendants, the Attorney General of the United States and the Commissioner of the Immigration and Naturalization Service ("the Service"), submits these findings of fact and conclusions of law in connection with the hearing scheduled for Friday September 20, 2002 at 9:30 a.m. relating to Evgueni Kovalev's petition for writ of habeas corpus.

**I.     FINDINGS OF FACT**

1.  Petitioner Evgueni Kovalev was born on January 26, 1954 in the province of Russia within the former Soviet Union.

2.  Kovalev entered the United States as a non-immigrant visitor for pleasure on April 30, 1989, with authorization to stay in the United States until October 12, 1989.

3. Kovalev remained in the United States beyond October 12, 1989 without authorization from the Service.

4. On December 11, 1989, with the assistance of his attorney Robert Murtha, Jr. of New York, Kovalev filed an application for asylum.

5. On March 29, 1991, the District Director of the Service in the District of New York denied Kovalev's asylum claim.

6. On March 29, 1991, the Service issued an Order to Show Cause and Notice of Hearing, advising Kovalev that he was deportable from the United States pursuant to Section 241(a)(1)(C)(i) of the Immigration and Nationality Act ("the INA") for remaining in the United States without permission.

7. Kovalev appeared for a hearing before an Immigration Judge in New York City, and conceded the charges of deportability in the Order to Show Cause. Kovalev sought relief from deportation by applying for asylum and withholding of removal.

8. On March 30, 1993, Immigration Judge John Speer denied Kovalev's application for asylum and withholding of removal.

9. Immigration Judge Speer granted Kovalev voluntary departure from the United States for a period of three months from the date of his order, with an alternative deportation order to the "U.S.S.R. (Russia)" if Kovalev failed to depart. The Immigration Judge's opinion explains that if Kovalev did not depart as required, "the privilege of voluntary departure will be

withdrawn without further notice of proceedings" and the order of deportation would become "immediately effective."

10. Under the Immigration Judge's Order, Kovalev had until June 30, 1993 to depart.

11. On June 29, 1993, Kovalev appeared at the INS office to sign a Voluntary Departure Notice, which extended his departure date to July 7, 1993.

12. The Voluntary Departure Notice specifically informed Kovalev of the consequences of failing to depart, including the fact that he would be ineligible for certain forms of relief under the INA for five years after the scheduled date of departure.

13. Kovalev was given oral notice of the contents of the Voluntary Departure Notice in English.

14. Kovalev signed the form, and gave no indication that he did not understand what had been explained to him.

15. Kovalev understood the warnings in the Voluntary Departure Notice.

16. Kovalev did not leave the country by July 7, 1993.

17. On September 14, 1993, the Service issued a Warrant of Deportation and sent Kovalev a notice that he had been ordered deported to the U.S.S.R. The notice was sent to the last address the Service had on record for Kovalev. Although it appears that Kovalev was no longer living at this address, a copy of the form was also sent to his attorney, Mr. Murtha.

18. On April 11, 1994, the Service sent Kovalev a "bag and baggage" letter to the last address it had on record, advising him that the Service intended to enforce his departure from the United States. A copy of the letter was sent to Kovalev's attorney, Mr. Murtha.

19. Kovalev did not report to the INS on the date scheduled in the letter.

20. The Service did not hear anything from Kovalev for several years.

21. In 1997, Congress passed a law known as the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), which provided a form of relief known as "suspension of deportation" for aliens from certain Central American and former Soviet bloc countries.

22. Kovalev, being from Russia, fell within the category of aliens who were statutorily eligible for relief. Kovalev learned of NACARA and its potential application to him, and found a lawyer to pursue this avenue of relief.

23. On March 31, 1998, Kovalev, with the assistance of his attorneys, Howard Rosengarten and Eric Horn from New York, filed a motion to reopen his deportation proceedings with the Board of Immigration Appeals ("BIA"), seeking suspension of deportation pursuant to Section 203 of NACARA.

24. In his motion, Kovalev represented to the Court that he was a Russian national. The motion, which Kovalev signed, states: "Further, I understand the consequences of failing to appear for a deportation hearing. I

knowingly and voluntarily waive the oral notice required by the Immigration and Nationality Act, Section 242B. Alternatively, I authorize this waiver by my attorney."

25. Although he was *prima facie* eligible for the relief, the Service opposed the granting of such relief as a matter of discretion based on the fact that Kovalev had violated his voluntary departure date.

26. Kovalev made no claim in his 1998 motion to reopen that he did not understand the consequences of failing to depart. He made no such claim in his responsive brief submitted on June 19, 1998, even after the Service opposed the motion specifically because of Kovalev's failure to depart.

27. On August 31, 1998, Immigration Judge Speer denied the relief as a matter of his discretion.

28. Kovalev, represented by Messrs. Horn and Rosengarten, appealed the denial of suspension of deportation.

29. On September 23, 1999, the BIA dismissed Kovalev's appeal, holding that the Immigration Judge did not err in exercising his discretion to deny Kovalev's request for relief.

30. On March 3, 2000, the Service sent Kovalev a Warning to Alien Ordered Removed or Deported, again advising him that he would be removed consistent with the Immigration Judge's order.

31. Kovalev nonetheless remained in the country.

32. On March 27, 2001, Kovalev's now 24 year old daughter, Elena Kovaleva, became a naturalized citizen of the United States.

33. On or about April 20, 2001, Elana Kovaleva submitted a Form I-130 Petition for Alien Relative as a prerequisite for Kovalev to adjust his status to a lawful permanent resident. At the same time, Kovalev submitted a Form I-485, application to adjust status to a permanent resident.

34. On June 12, 2002, at an interview relating to Kovalev's application for adjustment of status, the Service learned of the outstanding order of deportation, and took Kovalev into custody.

35. Kovalev is currently detained at the Berks County Prison. Kovalev filed a petition for writ of habeas petition on or about July 8, 2002.

36. On August 20, 2002, the Service wrote to the Russian Consulate in New York to obtain a travel document for Kovalev, in order to carry out his removal.

37. The Russian Vice Consul, Alexander Demkin, responded on September 5, 2002. Mr. Demkin stated that the Russian authorities had confirmed that Evgueni Kovalev was a Russian citizen and were prepared to issue a travel document for his deportation to Russia.

38. Kovalev is a Russian citizen.

39. Kovalev has filled out the required documentation for the Russian authorities, and the Service expects to receive a travel document for him

shortly.

40. The Service's performed a review of Kovalev's custody status on September 9, 2002. Based on the ease with which they were able to obtain a travel document for Kovalev, the expectation that the Service will be carry out his removal, and concerns about whether he would appear again to be removed if released, the Service determined that Kovalev should remain in custody at this time.

## II. CONCLUSIONS OF LAW

1. This Court has jurisdiction under 28 U.S.C. § 2241(c) to review an alien's removal order, but only to the extent that it is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3) (2002).

2. Following the 1996 amendments to the Immigration & Nationality Act, the habeas court has no jurisdiction to review the factual determinations or discretionary decisions of the Attorney General. Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001); Gutierrez-Chavez v. INS, 298 F.3d 824, 829-30 (9th Cir. 2002).

3. The decisions of the IJ and BIA are those of the Attorney General.

4. Under the INA, the Service is given a 90 day "removal period" in order to carry out an order of removal. 8 U.S.C. §1231(a)(1)(A).

5. Detention is mandatory during the removal period. 8 U.S.C. §1231(a)(2).

6. In <u>Zadydas v. Davis</u>, 121 S.Ct. 2491 (2001), the Supreme Court held that the 90 day statutory removal period and detention for an alien in deportation proceedings may be extended by the Attorney General up to six months if necessary. 121 S.Ct. at 2505.

7. The Court did not limit the removal period to a maximum of six months. Rather, as the Court stated: "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." <u>Id.</u>

8. In this case, the 90 day statutory removal period expired on September 12, 2002.

9. Under Zadvydas, the Service would have until December 12, 2002 as a presumptively reasonable period in which to remove Kovalev.

10. Kovalev has not presented any evidence that the Service will be unable to remove him in the "reasonably foreseeable future."

11. Kovalev's detention is lawful under the Constitution and the Immigration and Nationality Act ("INA").

12. Prior to its repeal in 1996, Section 242B(e)(2) of the INA provided, in pertinent part, as follows:

(A) IN GENERAL. Subject to Subparagraph B, any alien

> allowed to depart voluntarily under section 1254(e)(1) of this title ... who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for the relief described in paragraph (5) for a period of 5 years after the scheduled date of departure or the date or unlawful reentry, respectively.
>
> (B) WRITTEN AND ORAL NOTICE REQUIRED. Subparagraph (A) shall not apply to an alien allowed to depart voluntarily unless, before such departure, the Attorney General has provided written notice to the alien in English and Spanish and oral notice either in the alien's native language or in another language the alien understands of the consequences under subparagraph (A) of the alien's remaining in the United States after the scheduled date of departure. other than because of exceptional circumstances.

13. The kinds of relief available under Section 242B(e)(5) of the INA included voluntary departure under Section 242(b)(1), suspension of deportation or voluntary departure under Section 244, and adjustment or change of status under Sections 245, 248, or 249. See INA Section 242B(e)(5) (since repealed).

14. Under Section 242B(e)(2) of the INA, if the proper warnings were not given, the alien would not be subjected to the consequences of Section 242B(e)(2)(A), and the alien would not be prevented from seeking certain kinds of relief for the five years during which he should have departed.

15. Failure to give oral warnings under former Section 242B(e)(2) of the INA does not affect the validity of a final order of deportation. Petitioner's 1993 final order of deportation remains in effect.

16. Kovalev cannot establish a claim for relief from deportation due to any failure to give oral warnings in the Russian language under Section 242B(e)(2)(A) of the INA.

                                                        Respectfully submitted,

                                                        PATRICK L. MEEHAN
                                                        United States Attorney

_____

                                                        JAMES G. SHEEHAN
                                                        Assistant United States Attorney
                                                         Chief, Civil Division

Dated: September 18, 2002                 _____

                                                         SUSAN R. BECKER
                                                        Assistant United States Attorney
                                                         615 Chestnut Street, Suite 1250
                                                       Philadelphia PA 19106-4476
                                                       (215) 861-8310 Telephone
                                                       (215) 861-8349 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of September, 2002, I caused a true and correct copy of the foregoing Government's Findings of Fact and Conclusions of Law to be served by Federal Express upon the following:

Tatiana Aristova, Esquire<br>
Law Offices of John J. Gallagher, PC<br>
1760 Market Suite, Suite 1100<br>
Philadelphia, PA 19103

_____
Susan R. Becker