**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATEX EX REL. | | |
| KOVALEV, EVGIENI | ) | A 29776926 |
| | ) | Relator, |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION FILE NO. |
| JOHN ASHCROFT, as Attorney General of | ) | 02-4562 |
| the United States; | ) | |
| JAMES W. ZIGLAR, Commissioner of the | ) | |
| Immigration & Naturalization Service; | ) | |
| Warden of Berks County Prison | ) | |

**RELATOR'S SUPPLEMENTAL BRIEF**

**I. STANDARD AND SCOPE OF REVIEW IN INSTANT ACTION**

Recent changes in immigration law did not change the traditional broad scope of review in a habeas corpus action. The instant case involves three aspects, traditionally reviewed by federal courts as a part of a habeas corpus action: questions of law, factual findings and exercise of executive of discretion. This Court should apply de novo standard of review to questions of law, should review administrative agency's discretionary decisions for abuse of discretion and should not defer to clearly erroneous factual findings, if any. This Court should also rely on its own factual findings where the agency failed to make appropriate inquiry.

In 1867, Congress enacted a statute providing that federal courts "shall have power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States. ..." Act of Feb. 5, 1867, ch. 28, Sec. 1, 14 Stat. 385. When federal judges exercise their federal-question jurisdiction under the "judicial Power" of Article III of the

Constitution, it is "emphatically the province and duty" of those judges to "say what the law is." Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60 (1803).

Prior to 1952, a habeas corpus action in district court served as a sole procedure for challenging deportation orders. See Heikkila v. Barber, 345 U.S. 229, 235 (1953). In 1961, Congress enabled aliens to challenge deportation orders by a "petition for review" directly to a court of appeals. Immigration and Nationality Act of 1961, Pub. L. No. 87-301, § 106(a), 75 Stat. 650, 651 (codified at 8 U.S.C. § 1105a (1994) (repealed 1996)); see also Foti v. INS, 375 U.S. 217, 224-25 (1963) (stating that the intent of the 1961 act was to streamline the deportation process by vesting review in courts of appeals). However, these provisions neither repealed or altered the traditional scope of a habeas corpus action, which also remained available to aliens.

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) (codified in scattered sections of 8, 18, & 42 U.S.C.A.), which was believed to have curtailed the traditional Habeas Corpus jurisdiction. However, the Supreme Court and the Third Circuit have recently confirmed that the 1996 changes to the immigration laws did not affect a district court's jurisdiction pursuant to 28 U.S.C. § 2241 to review either statutory challenges to a removal order, see St. Cyr, supra, 121 S.Ct. at 2287, 150 L.Ed.2d 347 (2001), or constitutional ones as well. See Xu Cheng Liang, supra; see also Sandoval v. Reno, 166 F.3d 225, 238 (3d Cir.1999) (noting that section 2241(c)(3) "encompasses claims that one "is in custody in violation of the Constitution or laws or treaties of the United States" '); Steele v. Blackman, 236 F.3d 130 (3d Cir.2001); Chmakov v. Blackman, 266 F.3d 210, 2001 WL 1044599 (3d Cir.2001); Lee Moi Chong v. District Director, 264 F.3d 378 (3d Cir.2001) (reviewing the relator's constitutional, statutory and regulatory claims presented on habeas to the district court).

Similarly, the 1996 law did not affect the standard of review to be applied in district court's proceedings under 28 U.S.C. § 2241. According to the US Supreme Court, "at the core of [habeas corpus] power is the federal courts' independent responsibility-- independent from its coequal branches in the Federal Government, and independent from

2

the separate authority of the several States—to interpret federal law." Williams v. Taylor, 529 U.S. 362, 379 (2000). Supreme Court expressly rejected the idea that this authority may be ceded to "the courts of the States" under AEDPA. Id. Similarly, this Court should reject the proposition that this authority may be ceded to the US Department of Justice, i.e. to an administrative agency. With regard to AEDPA, the Supreme Court noted: "A construction of that would require the federal courts to cede … would be inconsistent with the practice that federal judges have traditionally followed in discharging their duties under Article III of the Constitution. If Congress had intended to require such an important change in the exercise of our jurisdiction, we believe it would have spoken with much greater clarity [in AEDPA]." Id. Similarly, as the new immigration Act, IIRAIRA, does not speak with great clarity limiting this Court's power of habeas Corpus review, the traditional scope of review should remain and should be applied in the instant case.

As to the "traditional" scope of review in habeas corpus proceedings, the writ's scope was always broadest where the commitment involved one or more of the following five elements: (1) a threat to the subject's fundamental liberty; (2) the exercise of executive power; (3) a judgment by an inferior court; (4) no safeguard of jury trial; and (5) the lack of any other available remedy. All these elements are present in deportation proceedings. First, deportation involves fundamental interests "basic to human liberty and happiness," and thus implicates the writ's highest function at common law--the safeguarding of personal liberty.[1] Second, deportation involves executive detention. Immigration judges and the Bureau of Immigration Appeals (BIA) are not Article III courts, but rather agencies under the authority of the Attorney General.[2]

---

[1] Wong Yang Sung v. McGrath, 339 U.S. 33, 50 (1950); see also Delgadillo v. Carmichael, 332 U.S. 388, 391 (1947) ("The stakes [of deportation] are indeed high and momentous for the alien who has acquired his residence here."); Bridges v. Wixon, 326 U.S. 135, 154 (1945) (emphasizing that the "liberty of an individual is at stake"); Ng Fung Ho v. White, 259 U.S. 276, 284 (1922) (stressing that deportation may "result... in loss of both property and life; or of all that makes life worth living"); Aleinikoff & Martin, supra note 46, at 854 (comparing the unique and high personal stakes of immigration to other administrative adjudications).

[2] See 8 U.S.C. § 1103(a) (1994) (providing that a "determination and ruling by the Attorney General with respect to all questions of [[immigration] law shall be controlling"). Until 1973, immigration judges were known as "special inquiry officers" and served as "trial attorneys" in deportation and exclusion cases. Aleinikoff & Martin, supra note 46, at 109. In 1983, immigration judges were moved from the Immigration

3

Third, review of deportation orders is akin to the review of decisions of an inferior court at common law. Under the common law definition, both immigration judges and the BIA qualify as inferior courts because their jurisdiction is specialized and limited. See Kempe's Lessee v. Kennedy, 9 U.S. (5 Cranch) 173, 184, 185 n.1 (1809) (Marshall, C.J.) (defining inferior courts). In certain respects, immigration tribunals are like the King's conciliar courts, the extensive power of which the common law courts sought to supervise through habeas corpus. Indeed, immigration proceedings are arguably not even judicial in nature. See Nakaranurack v. United States, 68 F.3d 290, 294 (9th Cir. 1995) (stating that "neither a ruling by an [immigration judge] nor a decision of the BIA constitutes a 'judicial proceeding...'"). It was precisely those inferior courts' ability to impose significant sanctions that implicated the functional role of habeas and subjected their decisions to the supervision of superior courts--a function today served in the immigration context by Article III courts.

Fourth, deportation is noncriminal and does not require trial by jury or other rights required by the Constitution in criminal proceedings. At common law, the absence of the safeguard of trial by jury triggered a broad scope of review on habeas. And fifth, when alien facing deportation has no other remedy, the common law writ further supports a broad scope of review. See, e.g., Bushell's Case, 124 Eng. Rep. 1006, 1007 (C.P. 1670) (stating that the court's "judgment ought to be grounded upon [its] own inferences and understandings"). See generally, THE UNTOLD STORY OF NONCRIMINAL HABEAS CORPUS AND THE 1996 IMMIGRATION, 107 YLJ 2509 (Yale Law Journal, 1998).

The instant case involves three aspects, traditionally reviewed by federal courts as a part of a habeas corpus action: questions of law, factual findings and exercise of executive of discretion. This Court should review the questions of law, including the issue of whether the administrative agency here violated Relator's due process rights,

---

and Naturalization Service (INS) into a new unit, the Executive Office of Immigration Review (EOIR), located in the Department of Justice and directly accountable to the Assistant Attorney General. See id. The BIA, a multi-member review body appointed by the Attorney General, has never been part of the INS; instead, it has always been directly accountable to the Attorney General. See id. at 112.

under de novo standard of review, and should review administrative agency's exercise of discretion under abuse of discretion standard. This Court may defer to the factual findings made by the agency unless such findings are clearly erroneous, and should also rely on its own factual findings where the agency failed to make appropriate inquiry.

*De novo review should apply to questions of law*

Federal Courts review the question of whether an administrative law judge violated a party's due process rights de novo. See Aguilar-Solis v. INS, 168 F.3d 565, 568 (1st Cir.1999). See also Ivezaj v. INS, 84 F.3d 215, 220 (6th Cir.1996); Hartooni v. INS, 21 F.3d 336, 339 (9th Cir.1994). Traditionally, questions of law engender de novo review. Costa v. INS, 233 F.3d 31, 34 (1st Cir.2000); Wallace v. Reno, 194 F.3d 279, 280-81 (1st Cir.1999). Abstract rulings of law are subject to de novo review. See Maldonado-Cruz v. U.S. Department of Immigration and Naturalization, 883 F.2d 788, 791 (9th Cir.1989). Federal Courts review de novo an agency's construction of a statute that it administers, subject, however, to established principles of deference. See INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999); Strickland v. Commissioner, Me. Dep't of Human Servs., 96 F.3d 542, 545 (1st Cir.1996). Federal Courts review legal conclusions of the BIA de novo. See Meguenine v. INS, 139 F.3d 25, 27 (1st Cir.1998); see also Wallace v. Reno, 194 F.3d 279, 280-81 (1st Cir.1999); Debab v. INS, 163 F.3d 21, 24 (1st Cir.1998). The court reviews the BIA's legal conclusions de novo, although it gives deference, where appropriate, to the agency's interpretation of the underlying statute in accordance with administrative law principles. Meguenine, 139 F.3d at 27.

An example of such deferential de novo review has recently been provided by the Third Circuit. See Lee Moi Chong v. District Director, 264 F.3d 378 (3d Cir.2001) (reviewing the relator's constitutional, statutory and regulatory claims presented on habeas to the district court). In *Chong*, the Court asked three questions: (1) Did the Administrative Agency's Actions Comply with Due Process? (2) Did the Administrative Agency Err in Interpreting the law? (3) Did the Administrative Agency Violate any laws?. These are precisely the issue to be considered in the instant case.

*This Court should review administrative agency's discretionary decisions for abuse of discretion*

There is historical evidence of the writ issuing to redress the improper exercise of official discretion. See, e.g., Ex parte Boggin, 104 Eng. Rep. 484, n. (a) 2 (K.B.1811) (referring to Chalacombe's Case, in which the court required a response from the Admiralty in a case involving the impressment of a master of a coal vessel, despite the argument that exemptions for "seafaring persons of this description" were given only as a matter of "grace and favour," not "of right"); Hollingshead's Case, 91 Eng. Rep. 307 (K.B.1702) (granting relief on the grounds that the language of the warrant of commitment--authorizing detention until "otherwise discharged by due course of law"-- exceeded the authority granted under the statute to commit "till [the bankrupt] submit himself to be examined by the commissioners"). Therefore, discretionary decisions by the administrative agency should not escape review in this Court, but should rather be considered for abuse of discretion.

*This Court should not defer to clearly erroneous factual findings by the administrative agency*

Suspension Clause requires at least some review of factual findings in deportation proceedings. Factual determinations have traditionally been reviewed in determinations of deportability. See, e.g., Lisotta v. United States, 3 F.2d 108, 111 (5th Cir. 1924) (holding that there was no evidence that the alien was likely to become a public charge) and Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 109 (1927) (upholding political opinion based deportation); Mahler v. Eby, 264 U.S. 32, 43 (1924) (finding deportation order lacked evidence to prove that the alien was an "undesirable resident"). This Court should not defer to clearly erroneous factual findings by the administrative agency in this case.

**II. RELATOR'S 1993 ORDER OF REMOVAL IS VIOLATIVE OF DUE PROCESS OF LAW**

Administrative agency's here, the Executive Office for Immigration Review (EOIR) as represented by the Immigration Judge, clearly did not comply with the Due Process requirements, because Relator was never provided the oral notice as required by

former INA §242B(e)(2)(B), 8 USCA §1252b(e)(2)(B), in effect at the time of his voluntary departure plea, as to the consequences for failure to depart, as required under INA §240(c)(4), 8 USCA §1229a(c)(4). Specifically, even if Relator had some understanding that his failure to depart voluntarily could have adverse consequences, Relator was never advised, as was statutorily required, that he would not be able to adjust his status through his US Citizen daughter, as a consequence of his failure to depart voluntarily. Had Relator been advised properly of the consequences, it is possible that he would chose to appeal Immigration Judge's order and/or take other appropriate legal action. Relator's prior counsel never advised him of the Immigration Judge's obligation to provide notice as per INA §240(c)(4), 8 USCA §1229a(c)(4), and never raised this argument before the Immigration Court or the Board of Immigration Appeals, which amounts to ineffective assistance of counsel raising to the level of due process violation. Based on the above, Immigration Judge's failure to follow the statutory guidelines effectively precluded Relator from making a meaningful plea as to his voluntary departure and/or appeal waiver as, as such in violation of the due process of law.

### III. DENIAL OF RELIEF UNDER NACRA IS VIOLATIVE OF DUE PROCESS OF LAW

In the instant case, Immigration Judge's and the BIA's denial of Relator's NACARA application is no less troublesome than the acceptance of Relator's plea of voluntary departure without statutorily required notice as to the consequences of such plea. Immigration Judge here[3] denied Relator's NACARA application in the exercise of discretion stating that Relator's failure to depart voluntarily should not be condoned. This clearly goes against the whole purpose and the objective of NACARA legislation.

In the instant case, subsequent to the expiration of his voluntary departure period, Relator filed a Motion to Reopen so that he could pursue relief pursuant to section 203 of

---

[3] For ease in reference, we discuss the IJ's findings, mindful that in contemplation of law they have become the BIA's (as is true whenever the BIA conducts a de novo review of the record, independently validates the sufficiency of the evidence, and proceeds to adopt the IJ's findings and conclusions). See, e.g., Surita v. INS, 95 F.3d 814, 819 (9th Cir.1996); see also 8 U.S.C. § 1105a(a)(4). The BIA was not bound by the decision of the IJ either as to law or fact, but could review the record de novo. See Matter of Adetiba, 20 I. & N. Dec. 506, 507, 1992 WL 195812 (BIA 1992).

the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Title II of Pub.L. No. 105-100, 111 Stat. 2193 (1997) amended by Pub.L. No. 105-139, 111 Stat. 2644 (1997), which allowed certain aliens from Guatemala, El Salvador, and Eastern Europe, even if they who have final orders of removal, like Relator here, to file motions to reopen to apply for suspension of deportation. NACARA specified that the Attorney General would designate a time period in which motions to reopen could be filed with the Board or the Immigration Courts without regard to the time and number restrictions of 8 C.F.R. § 3.2. Relator filed a timely Motion as established prima facie eligibility for NACARA relief. However, Immigration Judge denied Relator's NACARA application in the exercise of discretion because of Relator's failure to depart voluntarily.

Immigration Judge's finding was an abuse of discretion and an error of law. First, Immigration Judge (and, subsequently, the BIA) acted contrary to plain legislative intent of NACARA. The law specifically provides that an alien present in the United States who has been ordered excluded, deported, removed, or ordered to depart voluntarily from the United States under any provision of the INA may, ***notwithstanding such order***, apply for adjustment of status under NACARA. P.L. 105-100, Title II, §202(a)(2) (Nov. 19, 1997), as amended by §1505(a)(1) of H.R. 5666, enacted by reference in P.L. 106–544 (Dec.21, 2001). The law further provided that notwithstanding any limitation imposed by law on motions to reopen removal or deportation proceedings (except limitations premised on an alien's conviction of an aggravated felony), any alien who has become eligible for cancellation of removal or suspension of deportation as a result of the amendments made by §203 of the Nicaraguan Adjustment and Central American Relief Act may file one motion to reopen removal or deportation proceedings to apply for cancellation of removal or suspension of deportation. P.L. 104-208, Div. C, Title III, §309(g) (Sept. 30, 1996), added by P.L. 105-100, Title II, §203(c) (Nov. 19, 1997). Immigration Judge ignored plain text of the law abused his discretion in denying the Motion on a ground never statutorily enumerated for NACARA motions.

The motion to reopen proceedings to apply for suspension of deportation or cancellation of removal must establish that the alien: (1) is prima facie eligible for suspension of deportation pursuant to §244(a) of the INA (as in effect prior to April 1,

1997) or the special rule for cancellation of removal pursuant to §309(f) of IIRIRA, as amended by §203(b) of NACARA; (2) was or would be ineligible for suspension of deportation by operation of §309(c)(5) of IIRIRA (as in effect prior to November 19, 1997); or for cancellation of removal pursuant to INA §240A, but for operation of §309(f) of IIRIRA, as amended by §203(b) of NACARA; and (3) has not been convicted at any time of an aggravated felony. 8 CFR §3.43(b)(1)-(3), 66 Fed Reg 37119 (July 17, 2001). In addition, under NACARA motion must establish that the alien is within one of the six classes, including, among others, aliens who (1) entered the United States on or before December 31, 1990; (2) applied for asylum on or before December 31, 1991; and (3) at the time of filing such application for asylum was a national of the Soviet Union, Russia, any republic of the former Soviet Union, Latvia, Estonia, Lithuania, Poland, Czechoslovakia, Romania, Hungary, Bulgaria, Albania, East Germany, Yugoslavia, or any state of the former Yugoslavia. 8 CFR §3.43(b)(4). Relator fully satisfied these criteria.

Immigration Judge's finding here was contrary to the well established doctrine that it is the plain duty of the courts to construe remedial legislation to eliminate, so far as its text permits, the practices it condemns. Wong Yang Sung v. McGrath, 339 U.S. 33, 45 (1950). According to Senator Graham's statement as to the purposes and objectives of NACARA, the purpose of the law is to help "families" that "have been in our Nation since … our Government encouraged them to flee Communist oppression." Senate Congressional Record, September 30, 1997,143 Cong.Rec. S10185-06, 1997 WL 599762. As explained by Senator Mack, "Under immigration law, there has long been available a procedure called " suspension of deportation" for an individual found to be of good character and who has been here for 7 years to adjust to legal status if deporting that individual would cause "extreme hardship" to the person or his or her immediate legal present relative. This requires a case-by-case adjudication that the person being granted this benefit meets the legal standard. Because … conditions in the individual's home country had changed since the filing of their original asylum claims, the Department of Justice under President Clinton encouraged [them] to seek suspension of deportation rather than continuing to press their asylum claims … The reason why we

9

believe this is important is because we believe that this in essence will deny these people the right to due process under laws with respect to suspension of deportation."

As may be seen from this and other congressional discussions, one of the main reasons for NACARA adoption was the goal of allowing those who came here under communist regimes and whose asylum claims failed precisely because the United States succeeded in toppling such regimes, to stay in the country and to become lawful permanent residents. Relator's situation fits squarely within this framework. He came to the US in 1989, two years before the Soviet Union was dissolved, he applied for asylum, in 1989, because of his opposition to the communist regime in the Soviet Union, but his claim was denied because of changed country conditions. Since NACARA recognized and, in fact, specifically provided for the right of those who failed to depart voluntarily or under the order of deportation, to apply for relief under NACARA, it was clearly an abuse of discretion when Immigration judge denied Relator's NACARA application, especially in view of his own failure to provide adequate warnings.

In fact, when INS raised their objection to Relator's NACARA application based on INA §242B(e)(2)(B), Immigration Judge was bound to ascertain whether the adequate warnings were given. Probably having discovered that the warnings were never provided, INS withdrew their INA §242B(e)(2)(B) based argument, allowing the Judge to simply deny the Motion in the exercise of discretion. However, since the exercise of discretion here was based on Relator's failure to depart, Immigration Judge was bound to consider whether he provided adequate warnings with regard to such failure. Mere warning regarding a remote possibility of deportation is not sufficient here, first, because the statutory language requires so, and, secondly, because the statutorily required warning could have put Relator on notice regarding the seriousness of such failure and possible legal consequences, including possible adverse exercise of discretion with regard to his ability to adjust status. This was never done, and instead, through legal maneuvering, Immigration Judge simply avoided the warnings issue, abusing his discretion, acting contrary to the legislative purpose of NACARA, and in violation of the due process of law.

This decision was contrary to the BIA established law and policy: "It is interesting to note that the right to apply for suspension of deportation can be forfeited in a number of situations, e.g., for failure to appear for a deportation hearing or to comply with a grant of voluntary departure. See section 242B(e) of the Act, 8 U.S.C. § 1252b(e) (1994). The statute, however, limits forfeiture to instances in which oral notice of that consequence … has been communicated to the alien. See sections 242B(e)(1), (5) of the Act. This statutory requirement of notice before forfeiture of procedural and substantive rights otherwise available to an alien who has entered and resides in the United States is fundamental to fair play and elemental justice." BIA Decision, IN RE G-A-C-, Interim Decision (BIA) 3354 (1998).

## IV. RELATOR'S REMOVAL PRIOR TO ADJUDICATION OF HIS MOTION TO REOPEN IS VIOLATIVE OF DUE PROCESS OF LAW

Relator is eligible to have his order of removal rescinded and is now eligible to adjust his status to that of a lawful permanent resident of the United States, and his Motion to reopen, currently pending before the Board of Immigration Appeals is bound to be granted. For this reason, his removal prior to adjudication of the Motion, would be unconstitutional and in violation of the due process of law. Consequently, this Court should order INS not to remove Relator while his Motion to Reopen is pending and should order his release for this time period.

Respectfully,

Tatiana S. Aristova, Esq.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATEX EX REL.<br>KOVALEV, EVGIENI )<br>) | A 29776926 |
| )<br>) | Relator, |
| )<br>vs. )<br>) | CIVIL ACTION FILE NO. |
| JOHN ASHCROFT, as Attorney General of )<br>the United States; )<br>JAMES W. ZIGLAR, Commissioner of the )<br>Immigration & Naturalization Service; )<br>Warden of Berks County Prison ) | 02-4562 |

### CERTIFICATE OF SERVICE

This is to certify that I have this day served the following individuals in the foregoing matter with one copies of the foregoing by having hand-delivered and/or mailed by first class postage prepaid mail a copy of same as follows:

Honorable John Ashcroft
United States Department of Justice; Office of Immigration Litigation
Ben Franklin Station; P.O. Box 878, Civil Division
Washington, DC 20044

Patrick L. Meehan, Esq., James G. Sheenhan, Esq.,
Office of Immigration Litigation; Civil Division – Department of Justice
1331 Pennsylvania Avenue, N.W. Room 7026 South
Washington, DC 20004

Stephen J. Britt, Esq., Susan R. Becker, Esq.,
615 Chestnut St, Suite 1250
Philadelphia, PA 19106

This day of September 26, 2002.

_____
Tatiana S. Aristova, Esq.