**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES EX REL. | : | CIVIL ACTION |
| KOVALEV, EVGIENI | : | |
| A 29776926, | : | |
| Relator | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN ASHCROFT, as Attorney General of the | : | |
| United States; | : | |
| JAMES W. ZIGLAR, Commissioner of the | : | |
| Immigration & Naturalization Service; | : | |
| Warden of Berks County Prison, | : | |
| | : | |
| Respondents | : | NO. 02-4562 |

**MEMORANDUM**

**Baylson, J.**                                                                            **September 27, 2002**

Evgueni Kovalev, the Relator in this troublesome habeas corpus proceeding, entered the

United States in 1989 from his native Russia, as a non-immigrant visitor for pleasure, but

overstayed his visa authorization.  Over the following thirteen years, Kovalev twice sought but

was refused political asylum, was ordered to leave, again sought but was refused relief under the

Nicaraguan and Central American Relief Act ("NACARA")[1], was again ordered to leave, but

stayed.  In several different administrative proceedings, detailed below in the Findings of Fact,

The Attorney General of the United States and the Immigration and Naturalization Service

("Respondents" or "INS") have consistently ruled that Kovalev, by virtue of ignoring the initial

_____

[1]In 1997, Congress passed the Nicaraguan Adjustment and Central American Relief Act
("NACARA"), which provided for eligibility for suspension of deportation for aliens from
certain Central American and former Soviet bloc countries.  Pub. L. No. 105-100, 111 Stat. 2160,
2193 (1997).  As a former citizen of the Soviet Union, Kovalev was *prima facie* eligible for
NACARA relief.  Def.'s Ex. 6.

deportation order in 1993, does not deserve relief, and are now unwilling to delay deportation while determining whether he deserves any change in his status as a result of his daughter becoming a naturalized U.S. citizen in 2001.

What is the appropriate scope of review for this Court to employ in considering Kovalev's habeas petition?  In almost all of the reported recent cases on the scope of review, the Relator seeking habeas corpus has been convicted of a crime.  In these cases, the courts have been unanimous in holding that the scope of review is limited to determining whether there were violations of the Constitution or laws or treaties of the United States, and that a district court does not have jurisdiction to review the facts or determinations or discretionary actions of the Attorney General.

The threshold legal question presented by this case is whether the same standard of review should apply to an alien who violated a final order of removal, but is otherwise law-abiding, gainfully employed, who has paid taxes, and helps support his daughter.  Although Respondents' decisions may appear harsh, Kovalev, by ignoring repeated deportation orders, does not have the equities on his side.  However, the governing statute and decisions do not allow this Court to balance the equities.

After a hearing on September 20, 2002 and considerable research, and despite an eloquent brief from Kovalev's attorney, citing many expansive uses of the Great Writ, and English cases back to 1702, there does not appear to be any authority, or good legal reason, for this Court to broaden, for Kovalev, the very limited scope of review established by Congress, which the Court holds applies to this non-criminal alien.  Thus, the Petition for Writ of Habeas Corpus will be denied.

I.      Findings of Fact

1.      Evgueni Kovalev was born on January 26, 1954 in the province of Russia within the former Soviet Union.  Def.'s Ex. 1.

2.      Kovalev entered the United States as a non-immigrant visitor for pleasure on April 30, 1989, with authorization to stay in the United States until October 12, 1989.  Def.'s Ex. 3.

3.      Kovalev remained in the United States beyond October 12, 1989 without authorization from the INS.

4.      On December 11, 1989, with the assistance of his attorney Robert Murtha, Jr. of New York, Kovalev filed an application for asylum.  Def.'s Ex. 1.

5.      On March 29, 1991, the District Director of the INS in New York denied Kovalev's asylum claim.  Def.'s Ex. 2.  Following a review of Kovalev's application and an interview with him, the INS concluded that Kovalev was unable to establish a well-founded fear of persecution based on race, religion, nationality, political opinion, or membership in a particular social group.  Id.

6.      On March 29, 1991, the INS issued an Order to Show Cause and Notice of Hearing, advising Kovalev that he was deportable from the United States pursuant to Section 241(a)(1)(C)(i) of the Immigration and Nationality Act ("the INA") for remaining in the United States without permission.  Def.'s Ex. 3.

7.      Kovalev appeared for a hearing before an Immigration Judge ("IJ") in New York City, and conceded the charges of deportability in the Order to Show Cause.

Kovalev sought relief from deportation by applying for asylum and withholding of removal.

8.  On March 30, 1993, IJ John Speer denied Kovalev's application for asylum and withholding of removal.  Def.'s Ex. 4.  The IJ determined that Kovalev had not demonstrated a well-founded fear or clear probability of persecution should he be returned to Russia.  Id.

9.  IJ Speer granted Kovalev voluntary departure from the United States for a period of three months from the date of his order, with an alternative deportation order to the "U.S.S.R. (Russia)" if Kovalev failed to depart.  The IJ's opinion explains that if Kovalev did not depart as required, "the privilege of voluntary departure will be withdrawn without further notice of proceedings" and the order of deportation would become "immediately effective."  Def.'s Ex. 4.

10.  Under the IJ's Order, Kovalev had until June 30, 1993 to depart.  Def.'s Ex. 4.

11.  On June 29, 1993, Kovalev appeared at the INS office to sign a Voluntary Departure Notice, which extended his departure date to July 7, 1993.  Pl.'s Ex. 1.

12.  The Voluntary Departure Notice specifically informed Kovalev of the consequences of failing to depart, including the fact that he would be ineligible for certain forms of relief under the INA for five years after the scheduled date of departure.  Pl.'s Ex. 1.

13.  Kovalev was given oral notice of the contents of the Voluntary Departure Notice in English.  Pl.'s Ex. 1.

14.  Kovalev signed the form, and gave no indication that he did not understand what

-4-

had been explained to him.  Pl.'s Ex. 1.

15.     Kovalev did not leave the country by July 7, 1993.  Pl.'s Ex. 2.

16.     On September 14, 1993, the INS issued a Warrant of Deportation and sent Kovalev a notice that he had been ordered deported to the U.S.S.R.  The notice was sent to the last address the INS had on record for Kovalev.  Although it appears that Kovalev was no longer living at this address, a copy of the form was also sent to his attorney, Mr. Murtha.  Pl.'s Ex. 2.

17.     On April 11, 1994, the INS sent Kovalev a "bag and baggage" letter to the last address it had on record, advising him that the INS intended to enforce his departure from the United States.  A copy of the letter was sent to Kovalev's attorney, Mr. Murtha.  Pl.'s Ex. 3.

18.     Kovalev did not report to the INS on the date scheduled in the letter.

19.     The INS did not hear anything from Kovalev for several years.

20.     In 1997, Congress passed a law known as the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), which provided a form of relief known as "suspension of deportation" for aliens from certain Central American and former Soviet bloc countries.

21.     Kovalev, being from Russia, fell within the category of aliens who were statutorily eligible for relief.  Kovalev learned of NACARA and its potential application to him, and retained a lawyer to pursue this avenue of relief.

22.     On March 19, 1998, Kovalev, with the assistance of his attorneys, Howard Rosengarten and Eric Horn of the New York Bar, filed a motion to reopen his

deportation proceedings with the Board of Immigration Appeals ("BIA"), seeking

suspension of deportation pursuant to Section 203 of NACARA.  Def.'s Ex. 5.

23.    In his motion, Kovalev represented to the Court that he was a Russian national.

The motion, which Kovalev signed, states: "Further, I understand the

consequences of failing to appear for a deportation hearing.  I knowingly and

voluntarily waive the oral notice required by the Immigration and Nationality Act,

Section 242B. Alternatively, I authorize this waiver by my attorney."  Def.'s Ex.

5.

24.    Although he was *prima facie* eligible for the relief, the INS opposed the granting

of such relief as a matter of discretion based on the fact that Kovalev had violated

his voluntary departure date.  Def.'s Ex. 6.

25.    Kovalev made no claim in his 1998 motion to reopen that he did not understand

the consequences of failing to depart.  He made no such claim in his responsive

brief submitted on June 19, 1998, even after the INS opposed the motion

specifically because of Kovalev's failure to depart.  Def.'s Ex. 5, 7.

26.    On August 31, 1998, IJ Speer denied the relief as a matter of his discretion.

Def.'s Ex. 9.  He found that Kovalev's failure to depart after his final order of

removal disentitled him to any relief.  Id.

27.    Kovalev, represented by Messrs. Horn and Rosengarten, appealed the denial of

suspension of deportation.  Def.'s Ex. 10.

28.    On September 23, 1999, the BIA dismissed Kovalev's appeal, holding that the IJ

did not err in exercising his discretion to deny Kovalev's request for relief.  Def.'s

Ex. 11.

29. On March 3, 2000, the INS sent Kovalev a Warning to Alien Ordered Removed or Deported, again advising him that he would be removed consistent with the IJ's order. Def.'s Ex. 12.

30. Kovalev nonetheless remained in this country.

31. On March 27, 2001, Kovalev's now 24-year-old daughter, Elena Kovaleva, became a naturalized citizen of the United States. Pl.'s Ex. 4.

32. On or about April 20, 2001, Elena Kovaleva submitted a Form I-130 Petition for Alien Relative as a prerequisite for Kovalev to adjust his status to a lawful permanent resident. At the same time, Kovalev submitted a Form I-485, application to adjust status to a permanent resident. Pl.'s Ex. 4.

33. On June 12, 2002, at an interview relating to Kovalev's application for adjustment of status, the INS learned of the outstanding order of deportation, and took Kovalev into custody.

34. Kovalev is currently detained in prison. Kovalev filed a Petition for Writ of Habeas Corpus on July 9, 2002.

35. On August 20, 2002, the INS wrote to the Russian Consulate in New York to obtain a travel document for Kovalev, in order to carry out his removal. Def.'s Ex. 13.

36. The Russian Vice Consul, Alexander Demkin, responded in a letter dated September 5, 2002, stating that the Russian authorities had confirmed that Evgueni Kovalev was a Russian citizen and were prepared to issue a travel

document for his deportation to Russia.  Def.'s Ex. 14.[2]

37.    Kovalev is eligible to establish himself as a Russian citizen.[3]

38.    The INS performed a review of Kovalev's custody status on September 9, 2002.
       Based on the ease with which they were able to obtain a travel document for
       Kovalev, the expectation that the INS will be able to carry out his removal, and
       concerns about whether he would appear again to be removed if released, the INS
       determined that Kovalev should remain in custody at this time.  Def.'s Ex. 15.

39.    Kovalev has filled out the required documentation for the Russian authorities.
       Def.'s Ex. 16.

40.    The INS received a travel document for Kovalev on September 17, 2002, which
       establishes that Russia considers Kovalev to be either now, or has the right to
       qualify, as a Russian citizen, and in any event, Russia will allow Kovalev to return
       to Russia.  Def.'s Ex. 17.

41.    Given that Kovalev has lived in the United States since 1989, had two separate,

---

[2]Although this document is hearsay, it was admitted only for the fact of the communication.  The subsequently received travel document (Def.'s Ex. 17) establishes the truth of the matter asserted.

[3]In his Petition, Relator asserted he was stateless and not eligible to return to Russia, nor eligible to be deported to any other country.  At the hearing, Relator presented an expert witness, Natalie Batkaieva, a Russian Federation lawyer, who testified through an interpreter.  Ms. Batkaieva testified that the Russian Federation passed a law that as of February 6, 2001, all citizens of the former USSR are citizens of Russia if they reside within Russian borders.  Tr. at 77.  Based on her previous examination of Relator's birth certificate and Soviet passport, she concluded that Relator currently is not a citizen of the Russian Federation because he did not reside within Russian borders as of the law's effective date.  Id.  However, she also testified that it is possible under Russian law for Relator to quite easily become a Russian citizen if he so chooses.  Tr. at 82-92.  Thus, it is Relator's own inaction which has resulted in his stateless status.

privately retained, lawyers during his prior INS proceedings, and signed his name several times to documents acknowledging his waiver of certain rights, the Court cannot accept Kovalev's arguments that he did not have any knowledge that one consequence of his ignoring the prior voluntary deportation orders was to put his continued presence in this country at risk. Further, Kovalev's testimony, that his prior lawyers kept reassuring him that they would take care of things, does not provide any legally justifiable reason for this Court to find that Kovalev himself did not understand what was going on before the INS, or that he was completely unaware of the consequences of his ignoring the deportation orders.

II.    Conclusions of Law

     A.    Subject Matter Jurisdiction

Although jurisdiction is not contested, this Court notes it has subject matter jurisdiction to entertain Relator's petition for writ of habeas corpus. The Supreme Court held in INS v. St. Cyr, 533 U.S. 289, 297, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001) that neither the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") nor the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") repealed federal habeas jurisdiction under 28 U.S.C. § 2241. Following St. Cyr, the Third Circuit in Chmakov v. Blackman, 266 F.3d 210, 215 (3d Cir. 2001), concluded that Congress has preserved the right to habeas review for criminal and non-criminal aliens alike.

     1.    Scope of Review

In determining the scope of review, this Court must consider the impact of IIRIRA and AEDPA. Although there does not appear to be any restriction on judicial review of INS

decisions in the AEDPA, the IIRIRA does have certain restrictions.

Relator asserts that the 1996 laws did not affect the standard of review to be applied in proceedings under § 2241. Relator asserts that a district court should use the traditional scope of review in habeas corpus proceedings, looking to the threat to the Relator's fundamental liberty, the exercise of executive power, the correctness of the judgment by the inferior court, particularly where there has been no jury trial, and the lack of any other available remedy. In deportation cases, according to Relator, which involve, as in this case, detention imposed by an administrative agency, there is a need for broad judicial review. Thus, Relator asserts that this Court should not only review questions of law, including whether the administrative agency violated Relator's due process rights, under a *de novo* standard, but should also review the INS' exercise of discretion under the abuse of discretion standard, should defer to the factual findings made by INS unless they are clearly erroneous, and should make its own factual findings where INS failed to make the appropriate inquiry.

Respondents contend that this Court's jurisdiction under 28 U.S.C. § 2241(c)(3) is limited to a review of violations of the Constitution or laws or treaties of the United States, and that following the enactment of the IIRIRA and AEDPA, this Court does not have jurisdiction to review the factual determinations or discretionary actions of the Attorney General.[4] In support of

---

[4]The decisions of the IJ and BIA, as administrative agencies within the Department of Justice, are the decisions of the Attorney General. An excellent commentary of some of the issues in this case, including the changes in judicial scope of review on habeas petitions, will be found in Gerald L. Neuman, Habeas Corpus, Executive Detention, and the Removal of Aliens, 98 COLUM. L. REV. 961 (1998). Relator relies on a student note, The Untold Story of Non-Criminal Habeas Corpus and the 1996 Immigration Acts, 107 YALE L.J. 2509 (1998), and which argues for a broad scope of review, largely based on historical precedents in reviewing habeas petitions.

that proposition, Respondents cite <u>Sol v. INS</u>, 274 F.3d 648 (2d Cir. 2001) and <u>Gutierrez-Chavez</u> <u>v. INS</u>, 298 F.3d 824 (9th Cir. 2002).  <u>Sol</u>, involving a convicted felon's habeas petition, held that federal jurisdiction over § 2241 petitions does not extend to review of discretionary determinations by the IJ and BIA.  <u>Sol</u>, 274 F.3d at 651.  <u>Gutierrez-Chavez</u>, also involving a convicted felon's habeas petition, held that habeas petitions of aliens that do not allege constitutional error but rather seek to change the discretionary result reached by the INS are not within the scope of § 2241 and should be denied.  <u>Gutierrez-Chavez</u>, 298 F.3d at 830.

The question of whether federal courts have jurisdiction to review discretionary challenges to deportation orders has been left open by the Supreme Court by its opinions in <u>Calcano-Martinez v. INS</u>, 533 U.S. 348, 121 S. Ct. 2268, 150 L. Ed. 2d 392 (2001) and <u>INS v.</u> <u>St. Cyr</u>, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001).  The question is also open in the Third Circuit.  In <u>Catney v. INS</u>, 274 F.3d 648, 651 (3d Cir. 2001), a case involving a convicted felon's appeal from the BIA's dismissal of his claim for relief from deportation, the Court held that "we no longer have jurisdiction to review a denial of discretionary relief to a <u>criminal</u> alien." (emphasis added).

In a recent habeas case involving an alien with a criminal conviction, <u>Sulaiman v.</u> <u>Attorney General</u>, 212 F. Supp. 2d 413, 416 (E.D. Pa. 2002), Judge DuBois of this Court wrote, in denying the petition, and relying on <u>Sol</u>, 274 F.3d at 651 and <u>Bowrin v. U.S. INS</u>, 194 F.3d 483, 490 (4th Cir. 1999), that "[o]nly questions of pure law will be considered on § 2241 habeas review.  Review of factual or discretionary issues is prohibited."

The only case which the Court has located reviewing these issues in a non-criminal context is <u>Moore v. District Director, Immigration & Naturalization Service</u>, 956 F. Supp. 878

(D. Neb. 1997). This case has many factual similarities to the present case, because the Relator was also subject to, but ignored, a deportation order and also claimed that she failed to receive requisite warnings in an understandable manner about the adverse consequences of ignoring the deportation order. Id. at 880. Applying the law as it existed prior to the two 1996 statutes, the court found that the INS refusal to stay deportation was reviewable under an abuse of discretion standard, but the court could not find any abuse. Id. at 881-82. In reviewing subsequent INS actions under the 1996 statutes, AEDPA and IIRIRA, the court found Congressional intent to limit the scope of habeas review, and relying on cases involving criminal aliens, applied the same limited standard of review to the record before the INS. Id. at 882-83. The court did not find that the deportation proceedings were fundamentally unfair or that INS had committed a grave constitutional error. Id. at 883.

In Chmakov, the Third Circuit refused to draw any distinction between the availability of habeas to aliens facing deportation because of criminal convictions, and aliens similar to Kovalev, who have no criminal convictions. In ruling that the latter had a right to file habeas petitions under § 2241, to contest the legality of INS deportation orders, the Court stated:

> "It simply cannot be that the meaning [of AEDPA and IIRIRA] will change depending on the background or pedigree of the petitioner. Were we to so hold, we would render the meaning of any statute as changeable as the currents of the sea, and potentially as cruel and capricious. We, therefore, conclude that Congress has reserved the right to habeas review for both criminal and non-criminal aliens."

266 F.3d at 215.

After review of these authorities, this Court is unable to find any sound legal reason to apply a broader standard of review to INS proceedings involving non-criminal aliens who file

habeas petitions, than courts have uniformly applied to habeas petitions by criminal aliens. In

reaching this conclusion, the Court relies on the holding in <u>Chmakov</u> and the following:

a.      There is nothing in AEDPA or IIRIRA that warrants a different standard of review

for non-criminal aliens. Indeed, the wording of 8 U.S.C. § 1252 (a)(2)(B), which

applies to denials of discretionary relief, as in this case, is virtually identical to §

1252(a)(2)(C), which applies to criminal aliens. Thus, the conclusion all courts

interpreting § 1252(a)(2)(C) have reached, to limit the scope of review for

criminal aliens, warrants a similar limited scope of review for non-criminal aliens.

b.      To introduce a broader standard of review for non-criminal aliens such as Kovalev

would, without any specific Congressional authorization, open the judicial doors

to wide-ranging abuse of discretion review of the complex and often lengthy

proceedings before INS. This Court finds nothing in any statute warranting such

review.

c.      The courts have traditionally exercised limited habeas review over INS, which

performs difficult tasks in enforcing the immigration laws, as part of the

functioning of the Executive Branch of government. Any Congressional action,

such as IIRIRA, has been to restrict the scope of review, and this Court does not

find any authority to broaden that scope.

B.      <u>Relator's Detention is Lawful</u>

Respondents contend that Kovalev's detention is lawful. The INS is given a 90-day

period to carry out removal, during which detention is mandatory. 8 U.S.C. §§ 1231(a)(1)(A),

(a)(2). In <u>Zadvydas v. Davis</u>, 533 U.S. 678, 701, 121 S. Ct. 2491, 150 L. Ed. 2d 678 (2001), the

Supreme Court held that the 90-day period may be extended up to six months if necessary, and

perhaps longer "until it has been determined that there is no significant likelihood of removal in

the foreseeable future."  In this case, Kovalev has already been in detention beyond the

mandatory initial 90-day removal period.  The letter from the Russian consulate indicates that his

Russian citizenship has been established, and a travel document has been obtained.  Therefore,

Kovalev may be deported within the "reasonably foreseeable future."

      C.    <u>Relator Has No Claim for Habeas Relief Under the Statute</u>

Kovalev's claims do not reach constitutional or unlawful stature.  Kovalev claims he is

eligible to have his order of removal rescinded because he did not receive oral notice in the

Russian language of the consequences of his failure to voluntarily depart, and did not understand

the ramifications of failing to do so.  Prior to its repeal in 1996, 8 U.S.C. §§ 1252b(e)(2)(A) and

(B) provided:

    "(A) In general

        Subject to subparagraph (B), any alien allowed to depart voluntarily under
        section 1254(e)(1) of this title or who has agreed to depart voluntarily at
        his own expense under section 1252(b)(1) of this title who remains in the
        United States after the scheduled date of departure, other than because of
        exceptional circumstances, shall not be eligible for the relief described in
        paragraph (5) for a period of 5 years after the scheduled date of departure
        or the date or unlawful reentry, respectively."

    "(B) Written and oral notice required

        Subparagraph (A) shall not apply to an alien allowed to depart voluntarily
        unless, before such departure, the Attorney General has provided written
        notice to the alien in English and Spanish and oral notice either in the
        alien's native language or in another language the alien understands of the
        consequences under subparagraph (A) of the alien's remaining in the
        United States after the scheduled date of departure, other than because of
        exceptional circumstances."

Kovalev concedes that he signed the voluntary departure notice on June 29, 1993, and concedes that he was given oral notice of the warnings in English but claims he did not understand the warnings. There is no indication in the record that Kovalev received oral notice in Russian of the consequences of his failure to voluntarily depart. Even so, the failure to warn in Russian does not serve to rescind the final removal order.

According to the terms of the statute, the only relief Kovalev would be entitled to for not receiving the proper warnings is that he would not be prevented from seeking certain kinds of relief for the five years during which he should have departed. The kinds of relief available under § 1252b(e)(5) included voluntary departure under § 1252(b)(1), suspension of deportation or voluntary departure under § 1254, and adjustment or change of status under §§ 1255, 1258, or 1259. 8 U.S.C. § 1252b(e)(5) (since repealed).

Under § 1252b(e)(2), if the proper warnings were not given, the alien would not be subjected to the consequences of § 1252b(e)(2)(A), and the alien would not be prevented from seeking the type of relief mentioned above for the five years during which he should have departed. Nothing in the statute mandates that failing to receive the proper warnings entitles an alien to rescission of a final removal order, as Kovalev urges this Court. Therefore, Kovalev's 1993 final order of deportation remains in effect.

Kovalev's petition also vaguely asserts a claim of ineffective assistance of counsel with regard to counsel's allegedly not advising Kovalev of the IJ's obligation to provide oral notice in Russian and then not raising that claim before the IJ or BIA. However, there is no indication that Kovalev has met the INS requirements for relief from ineffective counsel, as outlined in Matter of Lozada, 19 I. & N. Dec. 637, 1988 WL 235454 (BIA 1988). The BIA's Lozada procedures

require an alien do the following: submit an affidavit by the alien setting forth the agreement with counsel regarding the alien's representation; submit evidence that counsel was informed of the allegations against him or her and allowed to respond; and indicate that a complaint was filed with the bar, or reasons why not. Xu Yong Lu v. Ashcroft, 259 F.3d 127, 132 (3d Cir. 2001). There is no evidence that Kovalev complied with any of these procedures. Further, this claim is relegated to just one sentence in Kovalev's initial petition and was not raised at the hearing. Accordingly, this Court does not find that Relator has submitted any evidence to support his allegation of ineffective assistance of counsel in violation of his constitutional right to due process.

With respect to Kovalev's NACARA motion to reopen his case, Respondents conceded that he was *prima facie* eligible for relief, but they opposed Kovalev's motion based on his failure to depart. Def.'s Ex. 6. The IJ agreed with Respondents and summarily denied Kovalev's motion. Def.'s Ex. 9. Although this Court notes that the IJ's denial of Kovalev's motion seems to fly in the face of NACARA's plain language[5], this denial was within the discretion of the INS. As discussed above, this Court does not have jurisdiction to consider discretionary decisions of the Attorney General, and nothing in the INS's denial of Kovalev's motion to reopen under NACARA rises to the level of a constitutional deprivation that would be reviewable by this

---

[5]"[A]ny alien [except an alien convicted of an aggravated felony] who has become eligible for cancellation of removal or suspension of deportation as a result of the amendments made by section 203 of the Nicaraguan Adjustment and Central American Relief Act may file one motion to reopen removal or deportation proceedings to apply for cancellation of removal or suspension of deportation."

Pub. L. No. 105-100, 111 Stat. 2160, 2193 (1997).

Court.[6]

       D.      <u>Relator Not Entitled to Stay of Deportation Pending Further INS Proceedings</u>

      As an alternative to his petition for habeas relief, Kovalev requests that this Court order

INS not to deport him for the period of time while his Motion to Reopen is pending before the

BIA.

      The standard for issuing a stay of Relator's removal is the same as the standard for

issuing a preliminary injunction.  <u>Luke v. Reno</u>, C.A. No. 01-0061, 2001 U.S. Dist. LEXIS 7748,

at *8 (D. N.J. Mar. 26, 2001).  The following four factors govern whether a district court should

issue a stay: 1) whether the petitioner has shown a reasonable probability of success on the merits

of his claim; 2) whether the petitioner will be irreparably harmed by the denial of relief; 3)

whether granting relief will result in even greater harm to the non-moving party; 4) whether

granting relief is in the public interest.  <u>Id.</u> at *8-9 (citing <u>ACLU of New Jersey v. Black Horse</u>

<u>Pike Reg'l Bd. of Educ.</u>, 84 F.3d 1471, 1477 n.2 (3d Cir. 1996)).

      In spite of the irreparable harm that Relator may suffer from being deported, the other

factors militate heavily in favor of denying a stay.  Nothing in the record indicates that Relator's

motion to reopen his case with the BIA will succeed.  Issuing a stay would harm Respondents in

their enforcement of the immigration laws and is not in the public interest as "control over

matters of immigration is a sovereign prerogative, largely within the control of the executive and

the legislature" and the "government's interest in efficient administration of immigration laws . .

. is weighty."  <u>Landon v. Plasencia</u>, 459 U.S. 21, 34, 103 S. Ct. 321, 74 L. Ed. 2d 21 (1982).

---

      [6]Relator's reliance on <u>Chong v. District Director, INS</u>, 264 F.3d 378 (3d Cir. 2001) is
unavailing because the petitioner had a criminal conviction and the decision is limited to review
of alleged constitutional or legal errors.

When considering all of the above factors, this Court can not issue a stay of deportation pending Relator's petition to reopen his case with the BIA.

III.    <u>Conclusion</u>

For the reasons discussed above, this Court lacks any grounds to find Relator's order of removal unconstitutional or unlawful, and his Petition for Writ of Habeas Corpus will be denied.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES EX REL.            :        CIVIL ACTION
KOVALEV, EVGIENI                 :
    A 29776926,               :
    Relator                   :
                              :
    v.                        :
                              :
JOHN ASHCROFT, as Attorney General of the  :
United States;                   :
JAMES W. ZIGLAR, Commissioner of the       :
Immigration & Naturalization Service;      :
Warden of Berks County Prison,   :
                              :
    Respondents               :        NO. 02-4562

<u>ORDER</u>

AND NOW, this 27th day of September, 2002, in consideration of Relator's Petition for Writ of Habeas Corpus, Respondents' opposition thereto, and the hearing held on September 20, 2002, it is hereby

ORDERED that Relator's Petition for Writ of Habeas Corpus is DENIED.

Upon an oral application to stay by Relator, it is further

ORDERED that a stay of deportation is GRANTED to 5 p.m. on September 30, 2002, conditioned upon the filing of an appeal from this Order; if the appeal is timely filed, an additional stay of twenty (20) days is granted pending application to the Court of Appeals for any further stay pending appeal.

**BY THE COURT:**

_____
**MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL\02-4562 Kovalev v. Ashcroft\Memorandum.wpd