## IN THE UNITED STATES COURT OF APPEALS
## THIRD CIRCUIT

| | | |
|---|---|---|
| UNITED STATEX EX REL. | | |
| KOVALEV, EVGIENI | ) | A 29776926 |
| | ) | Appellant, |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION FILE NO. |
| JOHN ASHCROFT, as Attorney General of | ) | |
| the United States; | ) | |
| JAMES W. ZIGLAR, Commissioner of the | ) | |
| Immigration & Naturalization Service; | ) | |
| Warden of Berks County Prison | ) | |

## APPEAL OF DECISION BY FEDERAL DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COME NOW KOVALEV, EVGIENI, Appellant in the above-styled and numbered cause, and for cause of action would show unto the Court to following:

This action is brought to seek review of the decision by the United States District Court, Eastern District of Pennsylvania entered against Appellant on 09/27/02.

On 09/27/02 District Court denied Appellant's petition for Habeas Corpus. The Court's conclusions are incorrect as a matter of law and fact. Therefore, the decision below was in error and should be reversed.

**STATEMENT OF FACTS**

1. Petitioner Evgueni Kovalev was born on January 26, 1954 in the former Soviet Union. He arrived to the United States from the Soviet Union on April 30, 1989. On December 11, 1989 Evgueni Kovalev filed an application for asylum.

2. On March 29, 1991, the District Director of the Service in the District of New York denied Evgueni Kovalev's asylum claim due to changed political circumstances in the Soviet Union and issued an Order to Show Cause and Notice of Hearing, advising Kovalev to appear before the immigration judge.

3. Evgueni Kovalev appeared for a hearing before an immigration Judge in New York City, and sought relief from deportation by applying for asylum and withholding of removal. On March 30, 1993, immigration Judge John Speer denied his application for asylum and withholding of removal. Judge Speer granted Evgueni Kovalev voluntary departure from the United States for a period of three months from the date of his order, with an alternative deportation order to the U.S.S.R. if he failed to depart.

4. The immigration Judge failed to provide Evgueni with the oral notice as required by former INA §242B(e)(2)(B), 8 USCA §1252b(e)(2)(B), in effect at the time of his voluntary departure plea, as to the consequences for failure to depart, as required under INA §240(c)(4), 8 USCA §1229a(c)(4). Specifically, even if Evgueni Kovalev had some understanding that his failure to depart voluntarily could have adverse consequences, he was never advised, as was statutorily required, that he would not be able to adjust his status through his US Citizen daughter, as a consequence of his failure to depart voluntarily.

5. Evgueni Kovalev was later given oral notice of the contents of the Voluntary Departure Notice in English, but he did not speak English at the time and did not understand the contents of the notice provided to him, merely signing the pre-printed the form, of which no copies were provided.

6. Evgueni Kovalev never received a Warrant of Deportation as it was sent to the address he was no longer residing at, and the Service had his updated address.

7.  In 1997, Congress passed a law known as the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"), which provided a form of relief known as "suspension of deportation" for aliens from certain Central American and former Soviet bloc countries. Mr. Kovalev, being from Russia, fell within the category of aliens who were statutorily eligible for relief.

8.  On March 31, 1998, Kovalev, with the assistance of his attorneys, Howard Rosengarten and Eric Horn from New York, filed a motion to reopen his deportation proceedings with the Board of Immigration Appeals ("BIA "), seeking suspension of deportation pursuant to Section 203 of NACARA. On August 31, 1998, Immigration Judge Speer denied the relief, clearly abusing his discretion, because he denied relief based on Mr. Kovalev's failure to depart, and never even ascertained that proper warnings of the consequences of such failure were provide to Mr. Kovalev.  On September 23, 1999, the BIA dismissed Mr. Kovalev's appeal, holding that the Immigration Judge did not err in exercising his discretion to deny Kovalev's request for relief, again, never ascertaining that the statutorily required notice was ever provided to him.

9.  On March 3,2000, the Service sent Kovalev a Warning to Alien Ordered Removed or Deported, again advising him that he would be removed consistent with the Immigration Judge's order, to the old address at which he was not residing for years, ignoring the new address Mr. Kovalev provided. He never received the Warning.

10. On March 27,2001, Kovalev's now 24 year old daughter, Elena Kovaleva, became a naturalized citizen of the United States and on or about April 20, 2001, Elena submitted a Form 1-130 Petition for Alien Relative as a prerequisite for Kovalev to adjust his status to a lawful permanent resident. At the same time, Kovalev submitted a Form 1-485, application to adjust status to a permanent resident. INS accepted the applications and issued an Employment Authorization document to Mr. Kovalev and scheduled him to appear for an interview.

11. On June 12,2002, at an interview relating to Mr. Kovalev's application for adjustment of status, the Service learned of the outstanding order of deportation, and took Mr. Kovalev into custody in the presence of his daughter. Mr. Kovalev

was detained at the Berks County Prison. On 09/27/02, INS transferred him to York County prison trying to effect his removal before he would have a chance to file an appeal from an adverse ruling by the Eastern District of PA with regard to his Habeas Corpus decision he filed on or about July 8, 2002. For this reason, emergency stay of removal is requested herein.

**JURISDICTION**

**Subject Matter Jurisdiction**

District Court had jurisdiction under 28 U.S.C. § 2241(c) to review an alien's removal order, to the extent that it is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3) (2002).

**Appellate Jurisdiction**

This court has appellate jurisdiction pursuant to 28 U.S.C. §1291, which provides in relevant part: "The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court." A final order disposing of all claims was filed on 09/27/02. The Notice of Appeal is filed on 09/27/02.

**VENUE**

Venue is proper in this court. Appellant is now incarcerated in York, PA. Therefore, venue is proper in this court.

**LEGAL ARGUMENT**

Appellant is eligible to have his order of removal rescinded and is now eligible to adjust his status to that of a lawful permanent resident of the United States, and for this

reason his Motion to reopen, currently pending before the Board of Immigration Appeals is bound to be granted. For this reason, his removal prior to adjudication of the Motion, would be unconstitutional and in violation of the due process of law.

Appellant was never provided the oral notice as required by former INA §242B(e)(2)(B), 8 USCA §1252b(e)(2)(B), in effect at the time of his voluntary departure plea, as to the consequences for failure to depart, as required under INA §240(c)(4), 8 USCA §1229a(c)(4). Specifically, even if Appellant had some understanding that his failure to depart voluntarily could have adverse consequences, Appellant was never advised, as was statutorily required, that he would not be able to adjust his status through his US Citizen daughter, as a consequence of his failure to depart voluntarily.

Had Appellant been advised properly of the consequences, it is possible that he would chose to appeal Immigration Judge's order and/or take other appropriate legal action. Therefore, the order of removal it stands now is illegal and in violation of 8 USCA §1252b(e)(2)(B), as Immigration Judge's failure to follow the statutory guidelines effectively precluded Appellant from making a meaningful plea as to his voluntary departure and/or appeal waiver.

At the time when Appellant petitioned INS to extend his voluntary departure, and signed a pre-printed form acknowledgement of his awareness of the consequences for failure to depart, in the English language, without translation, he did not understand the exact meaning of the wording on the form, and therefore was not provided with the notice in a language he could understand as required in INA §240(c)(4), 8 USCA §1229a(c)(4).

Appellant's prior counsel never advised him of the Immigration Judge's obligation to provide notice as per INA §240(c)(4), 8 USCA §1229a(c)(4), and never raised this argument before the Immigration Court or the Board of Immigration Appeals, which amounts to ineffective assistance of counsel raising to the level of due process violation.

When Immigration Judge Speer denied Appellant's application for relief under NACARA, Immigration Judge never considered his own failure to provide the required warnings to Appellant. BIA further exacerbated this error when BIA affirmed Immigration Judge's order, which was based on Appellant's failure to depart, without ever considering if the statutorily required warnings regarding the consequences of the failure to depart were provided. This is one more reason why his order of removal is illegal, as Immigration Judge and BIA clearly abused their discretion in denying the NACARA eligible beneficiary relief under NACARA, a remedial legislation, based on failure to depart, without ever ascertaining that the statutorily required warnings regarding the consequences of such failure were provided.

INS never provided any meaningful custody review to Appellant and abused their discretion in failing to release Appellant. Please see Custody review worksheet submitted by the Respondent in this matter, page 3 stating: "there is no indication on file that indicates the presence of any community ties". This proves INS never provided any meaningful custody review to Appellant. Appellant's continued detention is completely unfounded, as the sole reason for the District Director's decision to continue detention was the prospect of obtaining travel documents for Appellant. Mere ability to deport alien is not sufficient to hold him in detention where there the alien is not a risk of flight, and where removal may not be effected even if the travel documents were available, as in this case, where such removal prior to adjudication of the meritorious motion to reopen would be in violation of the due process of law. District Director violated established guidelines for custody review, and ignored substantial evidence confirming Appellant is not a risk of flight and not a danger to the community. Appellant was employed before his arrest, he has no criminal record, he is not a danger to the community, not a flight risk, his US citizen daughter needs his continued attention and support. Therefore, he should be released for the period while his departure may not constitutionally be effected due to Motion to reopen and/or other legal proceedings pending.

6

## I. STANDARD AND SCOPE OF REVIEW IN INSTANT ACTION

District Court found that it lacked jurisdiction to review discretionary decision by the Attorney General not to suspend Appellant's deportation under section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Title II of Pub.L. No. 105-100, 111 Stat. 2193 (1997) amended by Pub.L. No. 105-139, 111 Stat. 2644 (1997), which allowed certain aliens from Guatemala, El Salvador, and Eastern Europe, even if they who have final orders of removal, like Appellant here, to file motions to reopen to apply for suspension of deportation. District Court erred.

In making its determination, District Court relied on 8 U.S.C. §1252 (a)(2)(B), providing in relevant part: "Denials of discretionary relief. Notwithstanding any other provision of law, no court shall have jurisdiction to review … ii) any other decision or action of the Attorney General the authority for which is specified under this chapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title."

This provision does not make any express reference to the Habeas Corpus action. Similarly to the next section, 8 U.S.C. §1252 (a)(2)(C), which prohibits judicial review of removal orders against criminal aliens, but had been found repeatedly not to preclude Habeas Corpus action, 8 U.S.C. §1252 (a)(2)(B) should not be found to repeal or curtail traditional Habeas Corpus review by implication. This repeal by implication was found impermissible in <u>Chmakov v. Blackman</u>, 266 F.3d 210, 2001 WL 1044599 (3d Cir.2001). Furthermore, NACARA, adopted in 1997, is a separate law, with its own express intent and purpose, and is not a "decision or action of the Attorney General the authority for which is specified under [the chapter containing 8 U.S.C. §1252] ."

Recent changes in immigration law did not expressly change the traditional broad scope of review in a habeas corpus action. The instant case involves three aspects, traditionally reviewed by federal courts as a part of a habeas corpus action: questions of law, factual findings and exercise of executive of discretion. District Court should have applied de novo standard of review to questions of law, should review administrative

agency's discretionary decisions for abuse of discretion and should not defer to clearly erroneous factual findings, if any. District Court should have relied on its own factual findings where the agency failed to make appropriate inquiry.

In 1867, Congress enacted a statute providing that federal courts "shall have power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States. ..." Act of Feb. 5, 1867, ch. 28, Sec. 1, 14 Stat. 385. When federal judges exercise their federal-question jurisdiction under the "judicial Power" of Article III of the Constitution, it is "emphatically the province and duty" of those judges to "say what the law is." Marbury v. Madison, 1 Cranch 137, 177, 2 L.Ed. 60 (1803).

Prior to 1952, a habeas corpus action in district court served as a sole procedure for challenging deportation orders. See Heikkila v. Barber, 345 U.S. 229, 235 (1953). In 1961, Congress enabled aliens to challenge deportation orders by a "petition for review" directly to a court of appeals. Immigration and Nationality Act of 1961, Pub. L. No. 87-301, § 106(a), 75 Stat. 650, 651 (codified at 8 U.S.C. § 1105a (1994) (repealed 1996)); see also Foti v. INS, 375 U.S. 217, 224-25 (1963) (stating that the intent of the 1961 act was to streamline the deportation process by vesting review in courts of appeals). However, these provisions neither repealed or altered the traditional scope of a habeas corpus action, which also remained available to aliens.

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546 (1996) (codified in scattered sections of 8, 18, & 42 U.S.C.A.), which was believed to have curtailed the traditional Habeas Corpus jurisdiction. However, the Supreme Court and the Third Circuit have recently confirmed that the 1996 changes to the immigration laws did not affect a district court's jurisdiction pursuant to 28 U.S.C. § 2241 to review either statutory challenges to a removal order, see St. Cyr, supra, 121 S.Ct. at 2287, 150 L.Ed.2d 347 (2001), or constitutional ones as well. See Xu Cheng Liang v. INS, 206 F.3d 308, 310 (3d Cir.2000); see also Sandoval v. Reno, 166 F.3d 225, 238 (3d Cir.1999) (noting that section 2241(c)(3) "encompasses claims that one "is in custody in violation of the

8

Constitution or laws or treaties of the United States" '); <u>Steele v. Blackman</u>, 236 F.3d 130 (3d Cir.2001); <u>Chmakov v. Blackman</u>, 266 F.3d 210, 2001 WL 1044599 (3d Cir.2001); <u>Lee Moi Chong v. District Director</u>, 264 F.3d 378 (3d Cir.2001) (reviewing the appellant's constitutional, statutory and regulatory claims presented on habeas to the district court).

Similarly, the 1996 law did not affect the standard of review to be applied in district court's proceedings under 28 U.S.C. § 2241. According to the US Supreme Court, "at the core of [habeas corpus] power is the federal courts' independent responsibility-- independent from its coequal branches in the Federal Government, and independent from the separate authority of the several States—to interpret federal law." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). Supreme Court expressly rejected the idea that this authority may be ceded to "the courts of the States" under AEDPA. Id. Similarly, District Court should have rejected the proposition that this authority may be ceded to the US Department of Justice, i.e. to an administrative agency. With regard to AEDPA, the Supreme Court noted: "A construction of that would require the federal courts to cede … would be inconsistent with the practice that federal judges have traditionally followed in discharging their duties under Article III of the Constitution. If Congress had intended to require such an important change in the exercise of our jurisdiction, we believe it would have spoken with much greater clarity [in AEDPA]." Id. Similarly, as the new immigration Act, IIRAIRA, does not speak with great clarity limiting this Court's power of habeas Corpus review, the traditional scope of review should remain and should be applied in the instant case.

As to the "traditional" scope of review in habeas corpus proceedings, the writ's scope was always broadest where the commitment involved one or more of the following five elements: (1) a threat to the subject's fundamental liberty; (2) the exercise of executive power; (3) a judgment by an inferior court; (4) no safeguard of jury trial; and (5) the lack of any other available remedy. All these elements are present in deportation proceedings. First, deportation involves fundamental interests "basic to human liberty and happiness," and thus implicates the writ's highest function at common law--the

safeguarding of personal liberty.[1] Second, deportation involves executive detention. Immigration judges and the Bureau of Immigration Appeals (BIA) are not Article III courts, but rather agencies under the authority of the Attorney General.[2]

Third, review of deportation orders is akin to the review of decisions of an inferior court at common law. Under the common law definition, both immigration judges and the BIA qualify as inferior courts because their jurisdiction is specialized and limited. See Kempe's Lessee v. Kennedy, 9 U.S. (5 Cranch) 173, 184, 185 n.1 (1809) (Marshall, C.J.) (defining inferior courts). In certain respects, immigration tribunals are like the King's conciliar courts, the extensive power of which the common law courts sought to supervise through habeas corpus. Indeed, immigration proceedings are arguably not even judicial in nature. See Nakaranurack v. United States, 68 F.3d 290, 294 (9th Cir. 1995) (stating that "neither a ruling by an [immigration judge] nor a decision of the BIA constitutes a 'judicial proceeding...'"). It was precisely those inferior courts' ability to impose significant sanctions that implicated the functional role of habeas and subjected their decisions to the supervision of superior courts--a function today served in the immigration context by Article III courts.

Fourth, deportation is non-criminal and does not require trial by jury or other rights required by the Constitution in criminal proceedings. At common law, the absence of the safeguard of trial by jury triggered a broad scope of review on habeas. And fifth, when alien facing deportation has no other remedy, the common law writ further supports

---

[1] Wong Yang Sung v. McGrath, 339 U.S. 33, 50 (1950); see also Delgadillo v. Carmichael, 332 U.S. 388, 391 (1947) ("The stakes [of deportation] are indeed high and momentous for the alien who has acquired his residence here."); Bridges v. Wixon, 326 U.S. 135, 154 (1945) (emphasizing that the "liberty of an individual is at stake"); Ng Fung Ho v. White, 259 U.S. 276, 284 (1922) (stressing that deportation may "result... in loss of both property and life; or of all that makes life worth living"); Aleinikoff & Martin, supra note 46, at 854 (comparing the unique and high personal stakes of immigration to other administrative adjudications).

[2] See 8 U.S.C. § 1103(a) (1994) (providing that a "determination and ruling by the Attorney General with respect to all questions of [[immigration] law shall be controlling"). Until 1973, immigration judges were known as "special inquiry officers" and served as "trial attorneys" in deportation and exclusion cases. Aleinikoff & Martin, supra note 46, at 109. In 1983, immigration judges were moved from the Immigration and Naturalization Service (INS) into a new unit, the Executive Office of Immigration Review (EOIR), located in the Department of Justice and directly accountable to the Assistant Attorney General. See id. The BIA, a multi-member review body appointed by the Attorney General, has never been part of the INS; instead, it has always been directly accountable to the Attorney General. See id. at 112.

a broad scope of review. See, e.g., Bushell's Case, 124 Eng. Rep. 1006, 1007 (C.P. 1670) (stating that the court's "judgment ought to be grounded upon [its] own inferences and understandings"). See generally, THE UNTOLD STORY OF NONCRIMINAL HABEAS CORPUS AND THE 1996 IMMIGRATION, 107 YLJ 2509 (Yale Law Journal, 1998).

The instant case involves three aspects, traditionally reviewed by federal courts as a part of a habeas corpus action: questions of law, factual findings and exercise of executive of discretion. District Court should have reviewed the questions of law, including the issue of whether the administrative agency here violated Appellant's due process rights, under de novo standard of review, and should review administrative agency's exercise of discretion under abuse of discretion standard. This Court may defer to the factual findings made by the agency unless such findings are clearly erroneous, and should also rely on its own factual findings where the agency failed to make appropriate inquiry.

### De novo review should apply to questions of law

Federal Courts review the question of whether an administrative law judge violated a party's due process rights de novo. See Aguilar-Solis v. INS, 168 F.3d 565, 568 (1st Cir.1999). See also Ivezaj v. INS, 84 F.3d 215, 220 (6th Cir.1996); Hartooni v. INS, 21 F.3d 336, 339 (9th Cir.1994). Traditionally, questions of law engender de novo review. Costa v. INS, 233 F.3d 31, 34 (1st Cir.2000); Wallace v. Reno, 194 F.3d 279, 280-81 (1st Cir.1999). Abstract rulings of law are subject to de novo review. See Maldonado-Cruz v. U.S. Department of Immigration and Naturalization, 883 F.2d 788, 791 (9th Cir.1989). Federal Courts review de novo an agency's construction of a statute that it administers, subject, however, to established principles of deference. See INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999); Strickland v. Commissioner, Me. Dep't of Human Servs., 96 F.3d 542, 545 (1st Cir.1996). Federal Courts review legal conclusions of the BIA de novo. See Meguenine v. INS, 139 F.3d 25, 27 (1st Cir.1998); see also Wallace v. Reno, 194 F.3d 279, 280-81 (1st Cir.1999); Debab v. INS, 163 F.3d 21, 24 (1st Cir.1998). The court reviews the BIA's legal conclusions de novo, although it

gives deference, where appropriate, to the agency's interpretation of the underlying statute in accordance with administrative law principles. Meguenine, 139 F.3d at 27.

An example of such deferential de novo review has recently been provided by the Third Circuit. See Lee Moi Chong v. District Director, 264 F.3d 378 (3d Cir.2001) (reviewing the appellant's constitutional, statutory and regulatory claims presented on habeas to the district court).

### District Court should have reviewed administrative agency's discretionary decisions for abuse of discretion

There is historical evidence of the writ issuing to redress the improper exercise of official discretion. See, e.g., Ex parte Boggin, 104 Eng. Rep. 484, n. (a) 2 (K.B.1811) (referring to Chalacombe's Case, in which the court required a response from the Admiralty in a case involving the impressment of a master of a coal vessel, despite the argument that exemptions for "seafaring persons of this description" were given only as a matter of "grace and favour," not "of right"); Hollingshead's Case, 91 Eng. Rep. 307 (K.B.1702) (granting relief on the grounds that the language of the warrant of commitment--authorizing detention until "otherwise discharged by due course of law"-- exceeded the authority granted under the statute to commit "till [the bankrupt] submit himself to be examined by the commissioners"). Therefore, discretionary decisions by the administrative agency should not escape review in this Court, but should rather be considered for abuse of discretion.

### District Court not defer to clearly erroneous factual findings by the administrative agency

Suspension Clause requires at least some review of factual findings in deportation proceedings. Factual determinations have traditionally been reviewed in determinations of deportability. See, e.g., Lisotta v. United States, 3 F.2d 108, 111 (5th Cir. 1924) (holding that there was no evidence that the alien was likely to become a public charge) and Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 109 (1927) (upholding political opinion based deportation); Mahler v. Eby, 264 U.S. 32, 43 (1924) (finding deportation order lacked evidence to prove that the alien was an "undesirable resident").

District Court should not defer to clearly erroneous factual findings by the administrative agency in this case.

## II. APPELLANT'S 1993 ORDER OF REMOVAL IS VIOLATIVE OF DUE PROCESS OF LAW

District Court conducted evidentiary hearing and found that Appellant was never provided statutorily required notice as to the consequences of his failure to depart in the language he could understand. District Court correctly found that this violation should not serve to automatically rescind his order of removal, but erred in concluding that this violation should not serve to stay Appellant's removal while his meritorious Motion to Reopen, bound to be granted because of such lack of statutorily required notice, is being considered by the administrative agency.

Administrative agency here, the Executive Office for Immigration Review (EOIR) as represented by the Immigration Judge, clearly did not comply with the Due Process requirements, because Appellant was never provided the oral notice as required by former INA §242B(e)(2)(B), 8 USCA §1252b(e)(2)(B), in effect at the time of his voluntary departure plea, as to the consequences for failure to depart, as required under INA §240(c)(4), 8 USCA §1229a(c)(4). Specifically, even if Appellant had some understanding that his failure to depart voluntarily could have adverse consequences, Appellant was never advised, as was statutorily required, that he would not be able to adjust his status through his US Citizen daughter, as a consequence of his failure to depart voluntarily. Had Appellant been advised properly of the consequences, it is possible that he would chose to appeal Immigration Judge's order and/or take other appropriate legal action.

Appellant's prior counsel never advised him of the Immigration Judge's obligation to provide notice as per INA §240(c)(4), 8 USCA §1229a(c)(4), and never raised this argument before the Immigration Court or the Board of Immigration Appeals, which amounts to ineffective assistance of counsel raising to the level of due process violation. District Court did not allow Appellant sufficient time to comply with the

requirements of the <u>Matter of Lozada</u>, 19 I. & N. Dec. 637 (BIA 1988), as administrative record was served on Appellant's counsel less than a week before trial. Appellant is in the process of complying with requirements related to establishment of the claim of ineffective assistance of counsel.

As Immigration Judge's failure to follow the statutory guidelines effectively precluded Appellant from making a meaningful plea as to his voluntary departure and/or appeal waiver as, as such in violation of the due process of law, District Court erred in its refusal to recognize illegality in Appellant's removal order and further erred in its refusal to grant Appellant's plea for stay of removal while his Motion to reopen is pending before the BIA.

## III. DENIAL OF RELIEF UNDER NACRA IS VIOLATIVE OF DUE PROCESS OF LAW

District Court acknowledged that "IJ's denial of Kovalev's motion seems to fly in the face of NACARA's plain language." However, District Court denied relief claiming it lacked jurisdiction to consider this denial, as it was a discretionary decision by attorney general. Dictrict Court erred. Mere fact that Congress has attempted to preclude review, without any express reference to Habeas Corpus proceedings, does not necessarily demonstrate that a provision for discretionary relief delegates standardless discretion. Nor does it show that the lawful exercise of discretion in a removal proceeding is not a precondition to the legality of a resulting removal decision. In cases where, as here, exercise of discretion "flies in the face" of the stated purpose and intent of the law, such discretion should be reviewable as a part of Habeas Corpus proceedings, as its is clearly violative of the due process of law.

In the instant case, Immigration Judge's and the BIA's denial of Appellant's NACARA application is no less troublesome than the acceptance of Appellant's plea of voluntary departure without statutorily required notice as to the consequences of such

plea. Immigration Judge here[3] denied Appellant's NACARA application in the exercise of discretion stating that Appellant's failure to depart voluntarily should not be condoned. This clearly goes against the whole purpose and the objective of NACARA legislation.

In the instant case, subsequent to the expiration of his voluntary departure period, Appellant filed a Motion to Reopen so that he could pursue relief pursuant to section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Title II of Pub.L. No. 105-100, 111 Stat. 2193 (1997) amended by Pub.L. No. 105-139, 111 Stat. 2644 (1997), which allowed certain aliens from Guatemala, El Salvador, and Eastern Europe, even if they who have final orders of removal, like Appellant here, to file motions to reopen to apply for suspension of deportation. NACARA specified that the Attorney General would designate a time period in which motions to reopen could be filed with the Board or the Immigration Courts without regard to the time and number restrictions of 8 C.F.R. § 3.2. Appellant filed a timely Motion as established prima facie eligibility for NACARA relief. However, Immigration Judge denied Appellant's NACARA application in the exercise of discretion because of Appellant's failure to depart voluntarily.

Immigration Judge's finding was an abuse of discretion and an error of law. First, Immigration Judge (and, subsequently, the BIA) acted contrary to plain legislative intent of NACARA. The law specifically provides that an alien present in the United States who has been ordered excluded, deported, removed, or ordered to depart voluntarily from the United States under any provision of the INA may, ***notwithstanding such order***, apply for adjustment of status under NACARA. P.L. 105-100, Title II, §202(a)(2) (Nov. 19, 1997), as amended by §1505(a)(1) of H.R. 5666, enacted by reference in P.L. 106–544 (Dec.21, 2001). The law further provided that notwithstanding any limitation imposed by law on motions to reopen removal or deportation proceedings (except limitations

---

[3] For ease in reference, we discuss the IJ's findings, mindful that in contemplation of law they have become the BIA's (as is true whenever the BIA conducts a de novo review of the record, independently validates the sufficiency of the evidence, and proceeds to adopt the IJ's findings and conclusions). See, e.g., Surita v. INS, 95 F.3d 814, 819 (9th Cir.1996); see also 8 U.S.C. § 1105a(a)(4). The BIA was not bound by the decision of the IJ either as to law or fact, but could review the record de novo. See Matter of Adetiba, 20 I. & N. Dec. 506, 507, 1992 WL 195812 (BIA 1992).

premised on an alien's conviction of an aggravated felony), any alien who has become eligible for cancellation of removal or suspension of deportation as a result of the amendments made by §203 of the Nicaraguan Adjustment and Central American Relief Act may file one motion to reopen removal or deportation proceedings to apply for cancellation of removal or suspension of deportation. P.L. 104-208, Div. C, Title III, §309(g) (Sept. 30, 1996), added by  P.L. 105-100, Title II, §203(c) (Nov. 19, 1997). Immigration Judge ignored plain text of the law abused his discretion in denying the Motion on a ground never statutorily enumerated for NACARA motions.

The motion to reopen proceedings to apply for suspension of deportation or cancellation of removal must establish that the alien: (1) is prima facie eligible for suspension of deportation pursuant to  §244(a) of the INA (as in effect prior to April 1, 1997) or the special rule for cancellation of removal pursuant to §309(f) of IIRIRA, as amended by  §203(b) of NACARA; (2) was or would be ineligible for suspension of deportation by operation of §309(c)(5) of IIRIRA (as in effect prior to November 19, 1997); or for cancellation of removal pursuant to INA §240A, but for operation of §309(f) of IIRIRA, as amended by §203(b) of NACARA; and (3) has not been convicted at any time of an aggravated felony. 8 CFR §3.43(b)(1)-(3), 66 Fed Reg 37119 (July 17, 2001). In addition, under NACARA motion must establish that the alien is within one of the six classes, including, among others, aliens who (1) entered the United States on or before December 31, 1990; (2) applied for asylum on or before December 31, 1991; and (3) at the time of filing such application for asylum was a national of the Soviet Union, Russia, any republic of the former Soviet Union, Latvia, Estonia, Lithuania, Poland, Czechoslovakia, Romania, Hungary, Bulgaria, Albania, East Germany, Yugoslavia, or any state of the former Yugoslavia. 8 CFR §3.43(b)(4). Appellant fully satisfied these criteria.

Immigration Judge's finding here was contrary to the well established doctrine that it is the plain duty of the courts to construe remedial legislation to eliminate, so far as its text permits, the practices it condemns. Wong Yang Sung v. McGrath, 339 U.S. 33, 45 (1950). According to Senator Graham's statement as to the purposes and objectives of NACARA, the purpose of the law is to help "families" that "have been in our Nation

since … our Government encouraged them to flee Communist oppression." Senate Congressional Record, September 30, 1997,143 Cong.Rec. S10185-06, 1997 WL 599762. As explained by Senator Mack, "Under immigration law, there has long been available a procedure called " suspension   of deportation" for an individual found to be of good character and who has been here for 7 years to adjust to legal status if deporting that individual would cause "extreme   hardship" to the person or his or her immediate legal present relative. This requires a case-by-case adjudication that the person being granted this benefit meets the legal standard. Because … conditions in the individual's home country had changed since the filing of their original asylum claims, the Department of Justice under President Clinton encouraged [them] to seek suspension of deportation rather than continuing to press their asylum claims … The reason why we believe this is important is because we    believe that this in essence will deny these people the right to due process under laws with respect to suspension of deportation."

As may be seen from this and other congressional discussions, one of the main reasons for NACARA adoption was the goal of allowing those who came here under communist regimes and whose asylum claims failed precisely because the United States succeeded in toppling such regimes, to stay in the country and to become lawful permanent residents. Appellant's situation fits squarely within this framework. He came to the US in 1989, two years before the Soviet Union was dissolved, he applied for asylum, in 1989, because of his opposition to the communist regime in the Soviet Union, but his claim was denied because of changed country conditions. Since NACARA recognized and, in fact, specifically provided for the right of those who failed to depart voluntarily or under the order of deportation, to apply for relief under NACARA, it was clearly an abuse of discretion when Immigration judge denied Appellant's NACARA application, especially in view of his own failure to provide adequate warnings.

In fact, when INS raised their objection to Appellant's NACARA application based on INA §242B(e)(2)(B), Immigration Judge was bound to ascertain whether the adequate warnings were given. Probably having discovered that the warnings were never provided, INS withdrew their INA §242B(e)(2)(B) based argument, allowing the Judge to simply deny the Motion in the exercise of discretion. However, since the exercise of

discretion here was based on Appellant's failure to depart, Immigration Judge was bound to consider whether he provided adequate warnings with regard to such failure. Mere warning regarding a remote possibility of deportation is not sufficient here, first, because the statutory language requires so, and, secondly, because the statutorily required warning could have put Appellant on notice regarding the seriousness of such failure and possible legal consequences, including possible adverse exercise of discretion with regard to his ability to adjust status. This was never done, and instead, through legal maneuvering, Immigration Judge simply avoided the warnings issue, abusing his discretion, acting contrary to the legislative purpose of NACARA, and in violation of the due process of law.

This decision was contrary to the BIA established law and policy: "It is interesting to note that the right to apply for suspension of deportation can be forfeited in a number of situations, e.g., for failure to appear for a deportation hearing or to comply with a grant of voluntary departure. See section 242B(e) of the Act, 8 U.S.C. § 1252b(e) (1994). The statute, however, limits forfeiture to instances in which oral notice of that consequence … has been communicated to the alien. See sections 242B(e)(1), (5) of the Act. This statutory requirement of notice before forfeiture of procedural and substantive rights otherwise available to an alien who has entered and resides in the United States is fundamental to fair play and elemental justice." BIA Decision, IN RE G-A-C-, Interim Decision (BIA) 3354 (1998).

## IV. APPELLANT'S REMOVAL PRIOR TO ADJUDICATION OF HIS MOTION TO REOPEN IS VIOLATIVE OF DUE PROCESS OF LAW

Appellant is eligible to have his order of removal rescinded and is now eligible to adjust his status to that of a lawful permanent resident of the United States, and his Motion to reopen, currently pending before the Board of Immigration Appeals is bound to be granted. For this reason, his removal prior to adjudication of the Motion, would be unconstitutional and in violation of the due process of law. Consequently, District Court should have ordered INS not to remove Appellant while his Motion to Reopen is pending.

## V. DISCTRICT COURT SHOULD HAVE ORDERED APPELLANT'S RELEASE FROM INS DETENTION

District Court upheld Appellant's detention by INS based on 8 U.S.C. §§ 1231(a)(1)(A), (a)(2). District Court mistakenly found that Appelant should be detained simply because he may be removed, without making any findings as to Appellant's risk of flight or dangerousness to the community. District Court failed to consider defendant's poor health, hardship imposed on him and his US citizen daughter because of his detention. Since District Court never found that Appelant was a risk of flight, mere ability to deport Appellant is insufficient, because he could be released on order of supervision and may be ordered to appear for deportation if such deportation if cat becomes imminent. As prior orders to surrender for deportation were sent to the wrong address, his failure to appear should not be help against him, and he indeed credibly testified that he would so appear if ordered by the INS.

District Court deference to INS was in error, because INS never provided any meaningful custody review to Appellant and abused their discretion in failing to release Appellant. Please see Custody review worksheet submitted by the Respondent in this matter, page 3 stating: "there is no indication on file that indicates the presence of any community ties". This proves INS never provided any meaningful custody review to Appellant, who resided for 12 years at the same address, was steadily employed, paid taxes and supported his US citizen daughter. Appellant's continued detention is completely unfounded, as the sole reason for the District Director's decision to continue detention was the prospect of obtaining travel documents for Appellant. Mere ability to deport alien is not sufficient to hold him in detention where there the alien is not a risk of flight, and where removal may not be effected even if the travel documents were available, as in this case, where such removal prior to adjudication of the meritorious motion to reopen would be in violation of the due process of law. District Director violated established guidelines

19

for custody review, and ignored substantial evidence confirming Appellant is not a risk of flight and not a danger to the community. Appellant was employed before his arrest, he has no criminal record, he is not a danger to the community, not a flight risk, his US citizen daughter needs his continued attention and support. Therefore, he should be released for the period while his departure may not constitutionally be effected due to Motion to reopen and/or other legal proceedings pending. This Court should order INS to release Appellant from detention.

**PRAYER**

For all the above reasons, District Court's denial of Appellant's petition for Habeas Corpus was incorrect as a matter of law and fact. Therefore, the decision below was in error and should be reversed.

Respectfully submitted,

John J. Gallagher, P.C.

_____

Tatiana S. Aristova, Esq.

**IN THE UNITED STATES COURT OF APPEALS**
**THIRD CIRCUIT**

_____

| | | |
|---|---|---|
| KOVALEV, EVGIENI | : | CIVIL ACTION |
|     Appellant | : | NO:_____ |
| | : | |
|       v. | : | |
| | : | |
| John Ashcroft, U.S. Attorney General, | : | |
| and United States Immigration and | : | |
| Naturalization Service, | : | |
| Defendants | : | |

_____

**EMERGENCY MOTION TO STAY DEPORTATION**
**AND FOR ORDER TO SHOW CAUSE**
**WHY APPELLANT SHOULD NOT BE RELEASED**
**FROM INS DETENTION**

This action is brought to obtain relief against Defendants, by way of declaring that Appellant's removal from the United States is unconstitutional. Under the circumstances, his deportation would amount to a due process violation.

Appellant clearly demonstrated that his case warrants a stay of deportation. In the present case, by virtue of his detailed petition for review, the applicant demonstrated (1) a likelihood of success on the merits; (2) that irreparable harm would occur if a stay is not granted; (3) that the potential harm to the movant outweighs the harm to the opposing party if a stay is not granted; and (4) that the granting of the stay would serve the public interest. Appellant provided detailed explanation of factual and legal errors committed by the District Court in the course of his immigration proceedings. Based on the above, Appellant requests stay of deportation from this Court.

As Appellant alleged serious violations of the due process of law in his case, public interest clearly favors the granting of a stay of deportation in this matter. On the merits,

Appellant contends, citing ample legal authority, that the decision below was based on factual and legal mistakes and pinpoints each and every mistake with particularity. Further, Appellant will supply a legal brief in support of his position as will be directed by this Court, but the detailed petition for review in this case is sufficient to demonstrate significant likeliness of success on the merits in his case.

Appellant has demonstrated that he will suffer irreparable harm if a stay is not granted, as his order of removal was in violation of the due process of law. Appellant clearly demonstrated that staying his deportation would serve the public interest. Staying his deportation and his release would allow him to support his US citizen daughter and to continue to be gainfully employed.

Staying Appellant's deportation and his release from detention, on an order of supervision, will therefore address an important humanitarian issue while doing no harm to INS ability to deport him if case if such removal becomes imminent after they secure travel documentation for him. Objective and reasonable assessment of Appellant's risk of flight and danger to the community will clearly show that he is not a risk of flight and not a danger to the community and therefore he will appear if scheduled for deportation by INS.

Therefore, staying Appellant's deportation and his release will not frustrate the public's interest by delaying deportation process but will rather address important equities in this case and will allow Appellant to receive full and complete review of his claim in accordance with the constitutional requirement of the due process of law. Under the circumstances, appellants' deportation would amount to a due process violation. Based on the above, appellant requests stay of deportation from this Court.

As INS had secured travel document for Appellant and had already moved him from Berks County facility to York, from while deportations are normally performed, in anticipation of expedited deportation, Appellant respectfully requests expedited action on

this Motion. Stay of deportation currently in force was issued by the US District Court for 20 days, expiring on October 20, 2002.

Respectfully submitted by


Tatiana S. Aristova, Esq.